**In re Charles VENUTO, Patricia Venuto, Debtors.**

**No. 03–31479ELF.**

United States Bankruptcy Court, E.D. Pennsylvania.

June 6, 2006.

Matthew R. Nahrgang, Paoli, PA, for Debtors.

### MEMORANDUM OPINION

ERIC L. FRANK, Bankruptcy Judge.

### I. INTRODUCTION

Debtors Charles and Patricia Venuto ("the Debtors") have moved to reopen their closed chapter 13 case to obtain further relief from this court. More specifically, the Debtors request that I reopen their bankruptcy case to enter an order staying a sheriff's sale of their residence which is presently scheduled for June 9, 2006. The Debtors contend that the sale has been scheduled in violation of their rights under their confirmed chapter 13 plan, this court's confirmation order and this court's chapter 13 discharge order entered prior to the closing of the case.

The Debtors' Motion raises a number of legal issues which are important to chapter 13 debtors and their creditors, including:

- What are the legal consequences of the confirmation of a plan which provides for a cure of a prepetition residential mortgage delinquency under 11 U.S.C. § 1322(b)(5)?
- At what point in time is the cure of the mortgage delinquency effective?
- After the approval of the chapter 13 trustee's final report, the entry of the chapter 13 discharge order and the closing of the case, what jurisdiction, if any, does the bankruptcy court have to resolve a post-closing dispute regarding the cure of the prepetition mortgage delinquency?

- If jurisdiction exists to resolve such a dispute, what provision(s) of the Code authorizes the bankruptcy court to afford relief to the debtor: § 1327, § 1328, § 105?
- If the Code provides a remedy to an aggrieved debtor, what must the debtor prove to state a claim?
- If the debtor makes out a claim for relief, what type of relief is available: equitable relief, remedies of contempt, attorney's fees?

In ruling on the Debtors' Motion, I must resolve some, but not all, of the issues identified above.

## II. *PROCEDURAL HISTORY*

In this chapter 13 bankruptcy case, an order was entered granting the Debtors a chapter 13 discharge on August 25, 2006. The case was closed on August 18, 2005.

On March 17, 2006, the Debtors filed a Motion to Reopen Chapter 13 Case and to Enforce Confirmation and Discharge Orders ("the Motion"). Respondent National City Mortgage ("NCM") filed a Response to the Motion on April 21, 2006. A hearing was held on April 25, 2006. At that time, by agreement, the parties set May 10, 2006 as the deadline to submit a fact stipulation and memoranda in support of their respective provisions. The parties filed a fact stipulation and their respective

memoranda in a timely fashion on May 10, 2006.

## III. *STIPULATED FACTS*

The Debtors and NCM have stipulated that the following facts will comprise the record for purposes of resolving the Motion:[1]

1. The Debtors became delinquent in their mortgage payments owed to NCM on their principal residence at 4 Rucker Drive, Richboro, PA and a foreclosure complaint was filed against them on or about October 26, 2001.

2. Judgment was entered on the foreclosure complaint on or about June 17, 2002.

3. On August 1, 2003, the Debtors commenced this chapter 13 case by filing a petition with the clerk of the court. On that date an Order for relief was entered under 11 U.S.C. § 362(a).

4. On or about September 25, 2003, NCM filed Proof of Claim Number 4 in this case claiming arrears in the amount of $85,286.88 and a total claim of $325,676.47.[2]

5. On April 1, 2004, the Debtors filed a Second Amended Plan ("the Plan") which provided, inter alia, the following regarding NCM's claim:

(1) Mortgage to National City Mortgage. This creditor shall retain its lien in the Debtors' property securing its

---

1. The parties also stipulated that "the docket in this case and all documents filed of record with the bankruptcy court are admitted into evidence and the court may consider and/or review all such evidence as it deems appropriate in deciding this Motion." I take this agreement to be an endorsement by the parties of the accepted principle that the court may take judicial notice of the docket and the content of the bankruptcy schedules and other documents filed in the case for the purpose of ascertaining the timing and status of events in case and facts not reasonably in dispute.

See Fed.R.Evid. 201; *In re Scholl*, 1998 WL 546607, at *1 n. 1 (Bankr.E.D.Pa. Aug.26, 1998). *See also In re Indian Palms Associates*, 61 F.3d 197, 205 (3d Cir.1995).

2. The NCM mortgage was not appended as an exhibit to the Proof of Claim available on the court's electronic docket. *But see* Fed. R. Bankr.P. 3001(c), (d). Since the parties have not otherwise included the mortgage in the record, I have no information regarding the terms of the mortgage.

claim. Regular monthly payments shall be made to this creditor outside of the Plan. Arrears shall be paid at closing.[3]

6. On or about April 27, 2004, this Honorable Court confirmed the Plan.

7. The Trustee's final report states that NCM's arrears were paid in full.

8. On or about July 14, 2005, the Trustee filed his final report which stated, inter alia, that the plan was "concluded" on July 14, 2005, and that the plan was "closed completed".[4]

9. On July 15, 2005, notice was sent to all creditors and NCM advising of the filing of the final report and that creditors had 20 days to object or the court may enter an Order of Discharge. A certificate of mailing was filed on July 20, 2005.

10. A Discharge Order was entered on or about August 18, 2005 and the case was closed on or about August 25, 2005.

11. At the time this case was closed, the Debtors were two (2) post-petition monthly mortgage payments in arrears.

12. NCM purchased hazard insurance for the property and, at some point after August 2005, advised the Debtors that an escrow analysis revealed $10,435.05 was due and owing for escrow. This additional escrow charge accumulated post-petition. No notice regarding this alleged escrow deficiency was sent to the Debtors prior to August 2005.

13. On or about March 2006, NCM filed a writ of execution on its judgment in mortgage foreclosure and scheduled a sheriff's sale for June 9, 2006.

14. On or about April 12, 2006, NCM issued a payoff statement to the Debtors which included, inter alia, $7,601.46 for a sheriff's commission and $353.72 in foreclosure costs.

## IV. DISCUSSION

### A. The Parties' Contentions

On the merits, the Debtors frame the issue as follows: "whether, based on the stipulated facts, the prepetition default owed to NCM was cured and the mortgage reinstated." The Debtors contend that: (a) the plan provided for a cure of the prepetition default; (b) the confirmation order bound NCM to the terms of the plan; (c) the Debtors completed the plan (as evidenced by the Trustee's Final Report and the entry of the discharge order);[5] (d) completion of the plan acted as a cure of the default; (e) cure of the default nullified the prepetition default and

---

**3.** This provision was actually Paragraph 3.b.(1) of the Second Amended Plan. This plan provision makes reference to a "closing" because the plan contemplated that it would be funded, in large part, from the sale of real property. On its face, the Second Amended Plan suggests that the Debtor's residence and a second property would be sold to fund the plan which, in addition to the substantial secured claim of NCM, provided for the payment of a substantial secured tax claim of approximately $42,000. Obviously, the Debtors' residence was not actually sold and the parties' Stipulation does not explain exactly how the plan was actually funded.

**4.** The Trustee's Final Report also certified that the case had been "fully administered."

**5.** The Debtors' view the discharge order as a judicial determination that the plan was completed. They do not contend that their debt to NCM was discharged. Although the factual stipulation did not speak to this point, I take the Debtor's analysis to be an admission that the NCM mortgage (which is not part of the record, see n. 2, supra) was one in which the last payment "is due after the date on which the final payment of the plan is due," see 11 U.S.C. § 1322(b)(5), and was "provided for" under § 1322(b)(5). See 11 U.S.C. § 1328(a)(1).

reinstated the mortgage; (e) due to the reinstatement of the mortgage, NCM cannot remedy an alleged subsequent mortgage default without starting over in the foreclosure process under state law;[6] (f) by initiating execution on the prepetition judgment to remedy a post-cure default, NCM has acted "in disregard of the confirmation and discharge orders;"[7] (g) the court should enforce the confirmation and discharge orders by staying the sheriff's sale and awarding compensatory damages, punitive damages and attorney's fees.

In its Memorandum of Law, NCM does not challenge most of the legal principles espoused by the Debtors. NCM's argument is rather simple. It asserts that the Debtors "failed to comply with the requirements of 11 U.S.C. § 1322(b)(5) because they admittedly failed to maintain payments to NCM while their bankruptcy case was pending and because they failed to cure those postpetition defaults." In other words, NCM argues that the stipulated facts demonstrate that the Debtors, in fact, never cured the prepetition default and therefore, never reinstated their mortgage. NCM asserts that this case is analogous to the common bankruptcy situation in which a creditor is granted relief from the automatic stay based on a postpetition default in payments on a mortgage. Just as a creditor may resume the state court foreclosure process from the point at which it was stayed by the bankruptcy filing once relief from the stay is granted, NCM asserts that the failure of the Debt-

ors to make all of their postpetition payments gave NCM the right, after the entry of discharge, to resume foreclosure—notwithstanding the Debtors' payment of all of the required plan payments to the chapter 13 trustee.

## B. Reopening the Case Pursuant to 11 U.S.C. § 350(b)

There are two threshold questions which must be addressed before I analyze the merits of the dispute between the parties.

First, I must decide whether the case should be reopened.

Section 350(b) of the Bankruptcy Code, 11 U.S.C. § 350(b), permits a bankruptcy court to reopen a case "to administer assets, to accord relief to the debtor, or for other cause." See also Fed. R. Bankr.P. 5010 ("A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code.").

■ The decision to reopen the case is within the broad discretion of the bankruptcy court. In re Zinchiak 406 F.3d 214, 223 (3d Cir.2005). A decision by a bankruptcy court to reopen a case under § 350(b) is reviewed for abuse of discretion. Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir.1997); Judd v. Wolfe, 78 F.3d 110, 116 (3d Cir.1996).

■ The statute specifically makes reference to the reopening of a case "to accord relief to the debtor." Thus, based on

---

**6.** Many residential mortgages do include provisions that mandate a specific process for their enforcement after default which includes: (a) notice of default prior to acceleration of the mortgage or initiation of legal proceedings to foreclose against the borrower's property; and (b) opportunity to cure the default up to either the entry of judgment or shortly before a sheriff's sale. Under such a mortgage, reinstatement of the mortgage by a cure after a default and the entry of judgment would seem to implicitly mandate that en-

forcement of the mortgage after a subsequent default begin with a notice of default, rather than a continuation of the legal proceedings that were initiated as part of the earlier, cured default. Without the mortgage in the record, it is impossible for me to assess whether a cure pursuant to the terms of the mortgage occurred. See also n. 23, infra.

**7.** Debtors' Memorandum of Law 3.

the statutory text, it would seem appropriate to exercise my discretion generally to reopen a case to consider affording relief to a debtor who asserts a right provided under title 11, particularly if that right is grounded in a prior order of the court. *See In re Dodge,* 138 B.R. 602 (Bankr. E.D.Cal.1992); *In re Searles,* 70 B.R. 266 (D.R.I.1987). Other considerations may come into play in the exercise of the court's discretion, such as the movant's delay in seeking relief which may prejudice other parties. *See, e.g., Matter of Bianucci,* 4 F.3d 526, 528–529 (7th Cir. 1993). However, in this case, no such concerns have been raised by NCM. Of course, reopening the case does not mean that the Debtors will necessarily receive the relief requested. Therefore, I will reopen this bankruptcy case and further consider the propriety of granting relief for the Debtors.[8]

### C. Subject Matter Jurisdiction

█ A more intricate threshold question is whether the bankruptcy court has jurisdiction to grant the Debtors the relief that they request. Although this issue was not raised by NCM, the bankruptcy court, like all federal courts, is obliged to raise *sua sponte* the issue whether it has jurisdiction over any pending matter. *See, e.g., In re Spree.com Corp.,* 295 B.R. 762, 768 (Bankr. E.D.Pa.2003). *See also Luzerne County Convention Center Authority v. Township of Wilkes–Barre,* 78 F.Supp.2d 356, 357 (M.D.Pa.1999).

█ A bankruptcy court is a court of limited jurisdiction. *See In re Resorts International, Inc.,* 372 F.3d 154, 161 (3d Cir.2004). Federal bankruptcy jurisdiction is set forth in 28 U.S.C. § 1334. Section 1334(a) confers upon the district courts "original and exclusive jurisdiction of all cases under title 11" Section 1334(b) provides for original but not exclusive jurisdiction of all proceedings arising under title 11, or arising in or related to cases under title 11.

The Court of Appeals has concisely summarized the jurisdictional framework governing bankruptcy cases as follows:

Bankruptcy court jurisdiction potentially extends to four types of title 11 matters: (1) cases under title 11, (2) proceeding[s] arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11. Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as "core" proceedings; whereas proceedings "related to" a case under title 11 are referred to as "non-core" proceedings. Proceedings "related to" title 11 case include causes of action owned by the debtor that become property of the bankruptcy estate under 11 U.S.C. § 541(a), as well as suits between third parties that conceivably may have an effect on the bankruptcy estate.

*In re Combustion Engineering, Inc.,* 391 F.3d 190, 225–26 (3d Cir.2004) (quotation marks and citations omitted).

The subject of a bankruptcy court exercising jurisdiction after the entry of a discharge order has generated substantial judicial discussion. Much of the commentary regarding the exercise of post-discharge jurisdiction has taken place in chapter 11 cases. Chapter 11 differs from chapter 13 because in chapter 11 cases not involving individuals, the order confirming the plan of reorganization is also the discharge order. *See* 11 U.S.C.

---

8. At the April 25, 2006 hearing, NCM had no objection to consolidation of the hearing on the Debtors' Motion to Reopen with the Motion to Enforce Confirmation and Discharge Orders.

§ 1141(d). In chapter 13 cases, the discharge order is not entered at the time of confirmation; it is entered only after the debtor has made "all payments under the plan." 11 U.S.C. § 1328(a); 8 *Collier on Bankruptcy* ¶ 1327.02[3] (15th rev. ed.2005). Since the discharge order is entered earlier in the process in most chapter 11 cases, in comparison to chapter 13 cases, I recognize that there may be an inherently stronger case for the exercise of post-discharge jurisdiction under chapter 11. Nonetheless, in my view, the jurisdictional principles governing the exercise of post-discharge jurisdiction [9] identified in chapter 11 cases are fundamental principles of general applicability and are germane in chapter 13 cases as well. Thus, in the discussion below, reference to "post-confirmation" jurisdiction in chapter 11 cases also refers to "post-discharge" jurisdiction in chapter 13 cases.

An initial postulate accepted by all courts is that after the entry of the confirmation/discharge order in a chapter 11 case, there must come a time when "the cord" between the reorganized or rehabilitated debtor and the bankruptcy court must be severed. *In re Jewelcor, Inc.*, 166 B.R. 41, 45 (Bankr.M.D.Pa.1994). As one court observed in a chapter 11 case, "[s]ince at least 1944, courts have recognized the competing interests between retaining jurisdiction after confirmation . . . and ending the 'tutelage' status of reorganization." *In re Cinderella Clothing In-*

*dustries, Inc.*, 93 B.R. 373, 376 (Bankr. E.D.Pa.1988). *See also In re Zurn*, 290 F.3d 861, 864 (7th Cir.2002) (criticizing the notion that "anyone who has been a debtor in bankruptcy has eternal access to federal court for all disputes related in some way to the debts handled in the bankruptcy proceeding"); *Butler v. Greater Pythian Temple Ass'n of New York*, 205 F.2d 621, 622 (2d Cir.1953) (after a debtor has been financially rehabilitated through a confirmed reorganization plan, the debtor and its creditors "should work out their mutual rights and duties in the ordinary tribunals and should not forever continue under the tutelage of the bankruptcy court"); *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 2005 WL 1745471,*5 (S.D.Tex.2005).

One commentator suggests that notwithstanding the different sources of bankruptcy jurisdiction in 28 U.S.C. § 1334(b), the ultimate inquiry in the post-confirmation context [10] is whether the proceeding is "related," in the jurisdictional sense, to the bankruptcy case:

> [A] close reading of § 1334(b) suggests that even if a bankruptcy case has been technically closed, subject matter jurisdiction may nevertheless continue with respect to "civil proceedings arising under Title 11," such as one under Bankruptcy Code § 550(a) to recover an avoided transfer. The reason is that § 1334(b)'s "arising under" jurisdictional nexus constitutes an independent grant of subject matter jurisdiction, and is not

---

**9.** The instant case also involves the potential exercise of jurisdiction after a case has been closed. However, the fact that the case was closed is not determinative with respect to the more fundamental issue of jurisdiction. *See Donaldson v. Bernstein*, 104 F.3d 547, 552 (3d Cir.1997). *See also* Advisory Committee Note to the 1991 amendments to Fed. R. Bankr.P. 3022 ("A final decree closing the case after the estate is fully administered does not deprive the court of jurisdiction to enforce or

interpret its own orders and does not prevent the court from reopening the case for cause pursuant to § 350(b) of the Code").

**10.** Again, this is analogous to the exercise of jurisdiction after the entry of a chapter 13 discharge because, in non-individual cases, the chapter 11 confirmation order also constitutes the discharge order.

dependent upon the proceeding "arising in" or being "related to" the Title 11 case.[11] While the three § 1334(b) jurisdictional nexuses are alternative bases for jurisdiction, it can be expected, however, that in the absence of relatedness, a court would rule either that it lacked subject matter jurisdiction over a proceeding first commenced after consummation of a plan of reorganization or that it should voluntarily abstain from exercising jurisdiction as authorized by 28 U.S.C.A. § 1334(c)(1).

1 W. Norton, *Bankruptcy Law and Practice 2d* § 4:131 (March 2006).

In *In re Resorts International, Inc.*, the Court of Appeals specified in some detail the analytic principles governing the exercise of post-confirmation jurisdiction in the chapter 11 context. First, the court described generally the diminished reach of bankruptcy jurisdiction after the entry of the chapter 11 confirmation order:

> After confirmation of a reorganization plan, retention of bankruptcy jurisdiction may be problematic. This is so because, under traditional *Pacor* analysis,[12] bankruptcy jurisdiction will not extend to a dispute between non-debtors unless the dispute creates "the logical possibility that the estate will be affected." At the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred.

372 F.3d at 165 (citations omitted).

Next, the Court of Appeals explained that "related to" jurisdiction under 28 U.S.C. § 1334 can exist after plan confirmation:

> But courts do not usually apply *Pacor's* "effect on the bankruptcy estate" test so literally as to entirely bar post-confirmation bankruptcy jurisdiction. As the District Court correctly noted, though the scope of bankruptcy court jurisdiction diminishes with plan confirmation, bankruptcy court jurisdiction does not disappear entirely. Post-confirmation jurisdiction is assumed by statute and rule: 11 U.S.C. § 1142(b) authorizes the bankruptcy court to "direct the debtor and any other necessary party ... to perform any other act ... that is necessary for the consummation of the plan," and Fed. R. Bankr.P. 3020(d) provides that "[n]otwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate." Although § 1142(b) assumes that post-confirmation jurisdiction exists for disputes concerning the consummation of a confirmed plan, 28 U.S.C. § 1334 remains the source of this jurisdiction. Moreover, several courts have preserved post-confirmation jurisdiction in the bankruptcy court.

372 F.3d at 165 (citations omitted). *See also U.S. Trustee v. Gryphon at Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999); *Donaldson v. Bernstein*, 104 F.3d at 552–54.

Finally, the Court of Appeals set forth the standard for determining whether post-confirmation jurisdiction exists:

> Though courts have varied the standard they apply post-confirmation, the essential inquiry appears to be whether there is a close nexus to the bankruptcy

---

**11.** *See In re Glannon*, 245 B.R. 882, 887 (D.Kan.2000) (exercise of core jurisdiction after bankruptcy case closed).

**12.** This reference is to the definition of "related to" jurisdiction under 28 U.S.C. § 1334(b) set forth in the seminal opinion, *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984).

plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter.... At the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process....

The question is how close a connection warrants post-confirmation bankruptcy jurisdiction. Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus. Under those circumstances, bankruptcy court jurisdiction would not raise the specter of "unending jurisdiction"....

372 F.3d at 166–67. *See also In re Petrie Retail, Inc.*, 304 F.3d 223, 230 (2d Cir. 2002) ("[a] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization").

 Application of the principles discussed above leads me to conclude that this court has jurisdiction to decide the merits of the Debtors' Motion. I perceive a direct nexus between the current dispute and the Debtors' chapter 13 plan, which was confirmed by an order of this court.

Chapter 13 cases are filed with great frequency by debtors who wish to prevent a foreclosure and emerge from the chapter 13 case with a current, reinstated mortgage. *See* Elizabeth Warren, *The New Economics of the American Family*, 12 Am. Bankr.Inst. L.Rev. 1, 33–34 (2004). *See also* Melissa B. Jacoby, *Collecting Debts from the Ill and Injured: the Rhetorical Significance, but Practical Irrele-*

*vance, of Culpability and Ability to Pay*, 51 Am. U.L.Rev. 229, 266 (2001). In this case, the quintessence of the Debtors' chapter 13 financial rehabilitation plan was the proposed cure and reinstatement of a residential mortgage. In their confirmed chapter 13 plan, the Debtors exercised the statutory right, afforded them under the Bankruptcy Code, to cure a prepetition default on a secured claim pursuant to 11 U.S.C. §§ 1322(b)(5).

The Debtors contend, rightly or wrongly, that they performed their obligations under § 1322(b)(5) and that they have a legal entitlement to the reinstatement of their mortgage by virtue of the Bankruptcy Code and/or orders of this court. They contend that NCM's conduct violates the terms of their plan and the orders of this court. To determine whether the Debtors' contentions are correct, a court may have to make a factual determination regarding the payments made by the Debtors during the bankruptcy case in accordance with their confirmed plan or consider the scope and meaning of the confirmation order, discharge order and/or several provisions of the Code, including § 1322(b)(5), § 1327 and § 1328. If the Debtors are correct in their legal and factual contentions, this dispute requires the intervention of the court to implement and enforce the Debtors' chapter 13 plan insofar as it contemplated the reinstatement of the NCM mortgage.[13]

The dispute between the Debtors and NCM raises the question whether there came a point in time *during the bankruptcy proceeding* that the Debtors achieved the goal of their chapter 13 plan: the cure

---

**13.** I have not lost sight of the fact that NCM disputes the factual and legal contentions. *See* Part IV.D., *infra.* However, the question whether the Debtors are entitled to relief on the merits is distinct from the question whether the court has jurisdiction to decide the matter on the merits. *See generally In re*

*Monroe Well Service, Inc.*, 67 B.R. 746, 754 (Bankr.E.D.Pa.1986) (in context of request for issuance of injunction under 11 U.S.C. § 105, pointing out a request's lack of merit can (but should not) be confused with the court's lack of jurisdiction).

of their prepetition mortgage default and the reinstatement of their mortgage. There may be no issue that has a closer nexus to a chapter 13 bankruptcy case. I see no virtue in an alternative approach— to compel a debtor to enforce his rights under a confirmed plan by using it as a defense to an action brought in another court—when the filing of the action itself may be in violation of the debtor's rights under the confirmed plan. I conclude, therefore, that the claims raised by the Debtors are "integral" to the bankruptcy process as the term was used by the Court of Appeals in *In re Resorts International, Inc.* and that subject matter jurisdiction exists to decide the merits of the Motion.[14] *Accord, In re McDonald,* 336 B.R. 380, 385 (Bankr.N.D.Ill.2006).

This holding may conflict with dictum in another decision in this district, *In re Hurst,* 2004 WL 557203 (Bankr.E.D.Pa. 2004), decided by Chief Judge Sigmund. For the reasons explained below, I decline to follow the dictum in Hurst which, in turn, was based on an interpretation of inconclusive dictum from a decision of the Court of Appeals.

In *Hurst,* the debtors instituted an adversary proceeding against their mortgage lender following completion of their chapter 13 plan. The dispute centered on a "deferred interest charge" of $12,000 claimed by the lender. The record did not permit the court to determine whether the challenged charge arose prepetition or postpetition. Because the lender had taken no action to try to collect the disputed charges, the court held that there was no actual controversy and any ruling on the nature of the lender's rights after completion of the chapter 13 plan would be an advisory opinion. For the same reason, the court concluded the debtor's action proceeding was not necessary to protect the confirmation order, prevent interference with the plan or aid the administration of the case. Consequently, the court lacked jurisdiction to adjudicate the adversary proceeding.

Incidentally, the instant case is distinguishable from Hurst factually because NCM has taken concrete action which the Debtors allege is inconsistent with their confirmed and allegedly completed chapter 13 plan; NCM has not treated the mortgage as reinstated, as the Debtors contend it should, and has scheduled a sheriff's sale of the Debtors' property. Thus, unlike *Hurst,* there is a live controversy which may require bankruptcy court intervention to protect the confirmation order.

The *Hurst* court also ruminated about its power to act in the future if the creditor attempted to collect the disputed charges at issue:

> should [the creditor] seek to collect improper deferred interest charges after this bankruptcy is concluded or as a condition to satisfy the mortgage upon sale of the real estate as Debtor fears, state law provides the appropriate remedies and state court the appropriate forum if and when that should occur.... [I]f [the creditor] would seek to foreclose on its mortgage because the Debtor has failed to pay the deferred interest charges, its right to do so would have to be determined by the state court interpreting the terms of the financing agreements, the confirmed Chapter 13 plan and applicable state and bankruptcy law. This court's view on the enforceability of

---

14. Notwithstanding the existence of jurisdiction, there may be circumstances in which it is appropriate, as a matter of discretion, for the court to abstain from exercising jurisdiction in the post-discharge context. *See e.g., In re Zurn,* 290 F.3d at 865–69 (Ripple, J., dissenting).

those charges would not bind the state court.

*Id.* at *2.

The *Hurst* court suggested that these conclusions may be compelled by the Court of Appeals' decision in *Coffin v. Malvern Federal Savings Bank*, 90 F.3d 851, 854 (3d Cir.1996). As I read *Coffin*, it does not compel the conclusion that the bankruptcy court lacks jurisdiction to determine whether a creditor is violating the terms of a chapter 13 plan that has been confirmed by an order of the bankruptcy court and which, by virtue of 11 U.S.C. § 1327(a), is binding on creditors.

*Coffin* involved a peculiar procedural posture, completely unlike the case at bench. In *Coffin*, the bankruptcy court denied a secured creditor's motion for relief from the stay under 11 U.S.C. § 362(d) because the debtor was in compliance with a confirmed chapter 13 plan which provided for a cure of prepetition mortgage arrearages. In its decision, the bankruptcy court pointed out that upon termination of the automatic stay (at the conclusion of the bankruptcy case or perhaps sooner), the creditor would be free to exercise any available state law remedies. Although the debtor prevailed in opposition to the creditor's motion, the debtor was dissatisfied with the court's observation that creditor retained post-bankruptcy rights in the collateral because the debtor believed that completion of the plan would satisfy

the entire secured claim, not just cure the arrears.[15] After the denial of a motion for reconsideration, the debtor appealed to the district court and then to the Court of Appeals.

The specific holding of the Court of Appeals was that to the extent the bankruptcy court made a determination that the creditor's lien would survive completion of the plan, it had rendered an advisory opinion:

> The bankruptcy court's "finding"—that the Bank's lien was not discharged and that at the end of the case it would be free to exercise its state law remedies under its mortgage—was an advisory opinion. Its order denying Coffin's "cryptic" motion for reconsideration decided no actual controversy between the parties: Coffin had not moved for an order of lien avoidance (it is doubtful that he could have done so in any event, *see* 11 U.S.C. § 522(f)); the issue of whether the lien survived was not before the court for adjudication; and the "finding" it made did not determine whether the Bank would succeed in a subsequent foreclosure action in state court.

90 F.3d at 853.

*Coffin* is most frequently cited for the principle that the courts should not render advisory opinions.[16] However, there is a

---

15. The district court opinion in *Coffin* further elucidates the nature of the dispute. It appears that the creditor filed proofs of claim which requested payment of the mortgage arrears without separately stating the full amount of the mortgage debt. This apparently led to the debtor's contention, rejected by the bankruptcy court and the district court, that payment of the proof of claim should entitle the debtor to satisfaction of the mortgage. *See Coffin v. Malvern Federal Savings Bank*, 189 B.R. 323, 324–25 (E.D.Pa.1995).

16. *E.g., National Tax Funding, L.P. v. Thomas*, 2002 WL 32093127, at *1 (W.D.Pa. Mar.21, 2002); *In re Wilkoff*, 2001 WL 91624, at *9 n. 11 (Bankr.E.D.Pa. Jan.24, 2001); *In re Lake Ariel Associates, Ltd.*, 2000 WL 33728177, at *2 (Bankr.E.D.Pa. Apr. 26, 2000); *In re McCalla*, 238 B.R. 94, 96 (Bankr.M.D.Pa. 1999); *In re Soto*, 221 B.R. 343, 358 (Bankr. E.D.Pa.1998). *Coffin* also has been cited for the proposition that the parties cannot confer jurisdiction upon the court by agreement. *E.g. Gryphon*, 166 F.3d at 556; *In re LaRoche*

passage in the court's opinion which could possibly be read more expansively:

> Were the Bank to go to state court to foreclose on its mortgage, its right to do so would have to be determined by that court in light of its interpretation of the terms of the Confirmed Plan, as well as the terms of the mortgage, applicable state law and, of course, that court's findings of fact
>
> . . .
>
> Here, while there is no question of the adversity of the interest of the parties, conclusiveness of judicial judgment and any utility of that judgment are totally lacking. The determination of whether the Bank's lien is enforceable will eventually have to be made by another court in foreclosure proceedings and the bankruptcy court's advice will have no legal effect.
>
> That the Bank may have asked the bankruptcy court to interpret the Plan with respect to the question of the survival of its lien, and that the parties advanced opposing positions, does not alter the conclusion that what the court said in this respect was an advisory opinion.... Nor does it matter that foreclosure may be imminent since the fact remains that the "finding" of the bankruptcy court is an advisory opinion that will not have a judicial effect on the outcome of the future foreclosure proceedings.

90 F.3d at 853–54.

I do not read this passage from the *Coffin* decision to mandate that all disputes concerning the final impact of a chapter 13 plan on a mortgagee's rights must be decided in a nonbankruptcy forum. Rather, the main point of *Coffin* was that there was no controversy before the bankruptcy court. Depending upon future events, the court observed that issues may later be ripe which could be determined in a foreclosure proceeding in state court. To the extent that the court was even suggesting that the bankruptcy court would lack jurisdiction to resolve such issues (and I do not believe that is the only way to interpret the passage), the court's statement was itself dictum.

While dictum from the Court of Appeals must be carefully considered by a lower court, *see Coregis Insurance Co. v. Law Offices of Carole F. Kafrissen, P.C.*, 186 F.Supp.2d 567, 574 (E.D.Pa.2002), I conclude that *Coffin* is not controlling for two reasons. First, the dictum is subject to interpretation; it does not constitute an unambiguous viewpoint on the specific issue before me.[17] Second, there are other, more recent and specific opinions by the Court of Appeals that articulate the boundaries of a bankruptcy court's post-discharge jurisdiction. The most expansive of those decisions is *In re Resorts International, Inc.* Thus, I look to *Resorts International*, rather than *Coffin*, for the binding legal principles to be applied in this case.

As explained above, based on *Resorts International*, I have determined that there is jurisdiction in this matter. I now turn to the merits.

### D. *The Merits*

Section 1322(b)(5) of the Bankruptcy Code provides that a chapter 13 plan may:

> notwithstanding paragraph (2) of this subsection, provide for the curing of any

---

*Industries, Inc.*, 312 B.R. 249, 257 (Bankr. D.Del.2004).

**17.** I note that I am not the only bankruptcy judge to limit *Coffin* to its facts. *See In re Geiger*, 260 B.R. 83, 88 n. 6 (Bankr.E.D.Pa. 2001) (per Twardowski, J.).

default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due

Section 1327(a) of the Code provides:

The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

Section 1328(a) of the Code provides:

As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge . . . the court shall grant the debtor a discharge of all debts provided for by the plan . . . except any debt

(1) provided for under section 1322(b)(5) of this title . . . [18]

The parties in this case appear to agree that: (1) the Debtors' plan provided for a cure of the prepetition default on the NCM mortgage pursuant to 11 U.S.C. § 1322(b)(5); (2) if the Debtors have cured

the default, the consequence was the reinstatement of the mortgage; and (3) if the mortgage was reinstated, NCM was bound by the terms of the plan pursuant to § 1327(a) and therefore, could not lawfully proceed to execute on the prepetition judgment, which was entered based on prepetition mortgage delinquency. *See In re McDonald*, 336 B.R. at 384 (analogizing confirmed plan to "court approved contract or consent decree" and holding that completion of plan resulted in mortgage reinstatement, which eliminated any right of the creditor to foreclose based upon the prepetition arrearage). Nor has NCM questioned that a remedy exists in the bankruptcy court for a debtor to enforce the terms of a completed chapter 13 plan.[19] Therefore, I need not address these legal propositions. The sole issue appears to be whether the Debtors effected a cure of the prepetition default during the pendency of the bankruptcy case.

■ A cure of a prepetition default under 11 U.S.C. § 1322(b)(5) has two components. The debtor must make payments that "provide for the curing of any default within a reasonable time." The debtor

**18.** Section 1322(b)(5) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 23 (2005) ("BAPCPA"), effective as to cases filed beginning October 17, 2005. This case was filed prior to October 17, 2005. Therefore, the text quotes § 1322(b)(5) as it stood pre-BAPCPA.

**19.** The Debtors' seek to enforce their rights under their confirmed plan through 11 U.S.C. §§ 1327 and 1328 and 11 U.S.C. § 105. There is a line of decisions holding that there is no private right of action under 11 U.S.C. § 524, separate and apart from the contempt remedy available through § 105, to remedy violations of the statutory discharge injunction. *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir.2000); *Guetling v. Household Financial Services, Inc.*, 312 B.R. 699, 704 (M.D.Fla.2004); *In re Sims*, 278

B.R. 457, 466–467 (Bankr.E.D.Tenn.2002); *In re Beck*, 272 B.R. 112, 125 (Bankr.E.D.Pa. 2002). *See generally Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439, 445 (1st Cir.2000) (not addressing whether § 524 includes a right of action since § 105 provides a sufficient remedy). In this Circuit, the Court of Appeals has endorsed that line of caselaw and held that, following the same reasoning, no private right of action exists to enforce the provisions of 11 U.S.C. § 506(b). *See In re Joubert*, 411 F.3d 452, 457 (3d Cir.2005). The same reasoning may also apply to violations of 11 U.S.C. §§ 1327 and 1328. All of the cases cited above were class actions. Since NCM has not raised the issue, I need not consider whether they have any applicability when a debtor invokes 11 U.S.C. § 105 solely on his own behalf to enforce the substantive provisions of another Code provision.

must also provide for "the maintenance of payments while the case is pending."[20] There is no dispute that the Debtors' payments to the Trustee satisfied the prepetition delinquency that existed as of the commencement of the case. NCM filed a claim setting forth the amount of the delinquency and that sum was paid by the chapter 13 trustee. The dispute centers on whether the Debtors satisfied the "maintenance of payments" requirement under § 1322(b)(5), whether a cure and reinstatement of the mortgage was effected and, if so, when the cure and reinstatement occurred.

In this district, a chapter 13 debtor customarily acts as his own disbursing agent for the postpetition monthly instalments that must be paid when a debtor seeks to cure a prepetition default in accordance with § 1322(b)(5), *i.e.*, the payments required by the "maintenance of payments" obligation under § 1322(b)(5).[21] Notwithstanding § 1328(a), which suggests that the chapter 13 discharge may be entered promptly after the last plan payment has been made, it is also customary in this district for the discharge to be entered only after the trustee has completed distribution of all the plan payments, all the distribution checks have been cashed, the trustee's bank records reflect the cashing of all of the checks and the trustee has filed his final report.

This process usually takes several months.

Common sense suggests that for a debtor to cure a prepetition delinquency under § 1322(b)(5), there must come a point in time when both the debtor is current on the postpetition monthly instalments[22] and the creditor has received distributions from the trustee which satisfy the prepetition arrears. Certainly, in the perfect case, in which a debtor timely makes all the postpetition monthly instalments, the trustee makes distributions to the § 1322(b)(5) secured creditor sufficient to pay the prepetition arrears and the debtor completes the plan payments under the confirmed plan, a cure of the default has been effected under § 1322(b)(5), probably as of the later of the final distribution by the trustee to the creditor or the delivery of the last plan payment to the trustee. However, other cure scenarios are possible. Depending upon the details of a particular debtor's chapter 13 plan, it is possible that the trustee's final distribution to the secured creditor, whose claim is being cured under § 1322(b)(5), may be made well before the completion of the plan payments (with subsequent plan payments providing for a distribution to other credi-

**20.** Section 1322(e) also instructs that in a plan which provides for a cure of a default, "the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." Section 1322(e) applies only to loan transactions entered into after October 22, 1994. *See* Pub.L. 103–394, §§ 702(b)(2)(D) (Oct. 22, 1994). NCM's proof of claim states that the secured debt was incurred on April 8, 1993.

**21.** When the debtor pays the postpetition monthly instalments (as opposed to districts in which the debtor making the postpetition payments to the chapter 13 trustee who then forwards the payments to the mortgage lend-

er), some debtors and their counsel refer to the postpetition monthly instalment payments as being "outside the plan." The use of the term "outside the plan" in this context is incorrect. The payment of the postpetition monthly instalments is made in accordance with the plan whenever the plan invokes § 1322(b)(5). That the debtor, rather than the trustee, acts as the disbursing agent does not render the payments "outside the plan."

**22.** For a mortgage entered into after October 22, 1994 and therefore, subject to § 1322(e), it is possible that other financial obligations imposed by the parties' note and mortgage also must be paid current.

tors provided for in the plan). If, at the time of the final trustee distribution to the § 1322(b)(5) secured creditor, the debtor has paid all the postpetition monthly instalments that fell due, it is possible that under the terms of the underlying note and mortgage, a cure and reinstatement has occurred pursuant to applicable nonbankruptcy law. If so, even if there were a subsequent default in the debtor's performance under the chapter 13 plan (thereby precluding a cure under § 1322(b)(5)), the default may already have been cured under applicable nonbankruptcy law. *See generally* David Gray Carlson, *Rake's Progress: Cure and Reinstatement of Secured Claims in Bankruptcy Reorganization,* 13 Bankr.Dev. J. 273 (Spring 1997) (discussing interrelationship of bankruptcy and nonbankruptcy law).

The parties' fact stipulation states only that "[a]t the time this case was closed, Debtors were two (2) post-petition monthly mortgage payments in arrears." The record therefore, does not disclose when the two month postpetition mortgage payment arrearage arose. I can conceive of three scenarios in which the arrearage arose: (1) prior to the completion of the plan payments made to the chapter 13 trustee, (with NCM continuing to "carry the delinquency" by accepting subsequent monthly mortgage payments while the bankruptcy case was pending); (2) after the last plan payment, but before the final distribution check from the trustee was received by NCM; or (3) after NCM received the final distribution check but before the filing of the trustee's final report and the entry of discharge. Only in scenario # 3, and perhaps in scenario # 2, would a cure have

been effected under § 1322(b)(5). However, I need not decide this legal issue with precision in this case.

■ As the moving parties, the Debtors have the burden of proof in establishing that they effected a cure of the NCM mortgage delinquency during the case. Based on the record presented, I find that the Debtors have not met their burden of proof. The record does not establish that there was ever a moment when the Debtors were current in their postpetition payments to NCM and NCM received the distribution from the trustee for the entire prepetition delinquency. The record shows only that at the time the case was closed, the Debtors were two months in arrears as to their postpetition monthly instalments. Therefore, the Debtors have not shown that a cure was effected under § 1322(b)(5).[23]

The Debtors seek to shore up the gap in their case by arguing that as a matter of law, the entry of the chapter 13 discharge order constitutes a determination that all of the plan payments were made, including "the maintenance of payments while the case is pending" payments. This argument is not frivolous since § 1328(a) authorizes a court to grant the discharge after the completion of "all payments under the plan" and the postpetition payments to NCM are among the payments the Debtors were obliged to make under the plan. The argument also finds some support in *In re McDonald,* where the court described the chapter 13 discharge order as "a judgment adjudicating, inter alia, Plaintiff's cure of the pre-bankruptcy arrearage to the extent of entitling him to

---

**23.** With neither the mortgage or the note in the record, it is also not possible to determine whether a cure was effected under applicable nonbankruptcy law. However, even if such a determination could be made, it would not involve enforcement of the Debtors' rights under the plan or 11 U.S.C. § 1327. In such circumstances, unless the exercise of ancillary jurisdiction were appropriate, it is doubtful that this court would have jurisdiction to decide the matter.

reinstatement of his loan when the discharge entered." 336 B.R. at 385.

*McDonald* is factually distinguishable from the instant case in two ways. First, in *McDonald,* the debtor's plan payments to the trustee included both the prepetition arrears and the amount necessary to provide for the maintenance of payments while the case was pending. *Id.* at 382. Second, and not surprisingly, not only were the prepetition arrears paid, but all of the postpetition payments were made; the court made a specific finding that "current post-petition mortgage payments were made when due." *Id.* at 385.

The dispute in *McDonald* arose because the plan specified the amount of the arrears and the creditor filed a claim after confirmation of the plan for a higher amount. *Id.* at 382. After the entry of the discharge order, the creditor then asserted that the delinquency had not been cured, presumably because it had not been paid the amount set forth in the proof of claim, and simply proceeded with execution on its prepetition foreclosure judgment. *Id.* at 382–383. The court held that the creditor violated the confirmed plan and the confirmation order by scheduling a sheriff's sale. *Id.* at 386.

Thus, *McDonald* is a case that addresses a conflict between the claims allowance process and a confirmed plan and gives primacy to 11 U.S.C. § 1327. It did not deal with a dispute as to whether a debtor has made all of the payments required by the plan or analyze the proper methodology for determining that issue. Its statement that the entry of the discharge order is a determination that all plan payments were made was not essential to its decision and I do not find it persuasive with respect to the issue before me.

■■■ As observed above, in this district, chapter 13 debtors regularly act as the disbursing agent for the postpetition mortgage payments, which must be made in a plan that invokes § 1322(b)(5). Historically, the discharge order has been entered in chapter 13 cases in this district after completion of the plan payments disbursed by the trustee regardless whether the debtor has paid all of the postpetition payments to a secured creditor under § 1322(b)(5). I am unwilling to disturb this district's longstanding custom and practice. Not all districts give chapter 13 debtors the option of serving as the plan disbursing agent for postpetition monthly mortgage payments and a debtor obtains a number of benefits by doing so, including a reduction in the amount of the chapter 13 trustee's statutory commission.[24] The *quid pro quo* for those benefits is that if a dispute arises, the debtor may have to prove that all of those payments were made as required by the plan. I am not prepared to create a legal fiction that all of the payments were made by deeming them paid simply because the court has entered the chapter 13 discharge order.

## V. CONCLUSION

For the reasons set forth above, I will reopen the Debtors' bankruptcy case, but I will deny the Debtors' request that I enjoin the sheriff's sale of their residence presently scheduled for June 9, 2006.

---

24. In making this observation, I take no position on the propriety of the practice in other districts of compelling a chapter 13 debtor to use the chapter 13 trustee as the disbursing agent for postpetition monthly instalments which must be paid to a creditor whose claim is being provided for under § 1322(b)(5).