**In re Joanne L. RISER, Debtors.**

**No. 97–1573–3F3.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Jan. 7, 2003.

Leon M. Boyajan, II, Inverness, FL, for Debtor.

Mamie L. Davis, trustee.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND NOTICE OF EVIDENTIARY HEARING ON ISSUE OF DAMAGES FOR VIOLATION OF DISCHARGE INJUNCTION

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court upon Debtor's Motion for Sanctions Against Wells Fargo Home Mortgage, Inc. ("Wells Fargo"). The Court conducted a hearing on December 11, 2002. Debtor appeared at the hearing and offered testimonial and documentary evidence. Wells Fargo was not represented at the hearing. At the conclusion of the hearing the Court instructed Debtor's counsel to ascertain within ten days the disposition of a similar proceeding before the Honorable Karen S. Jennemann, after which the Court would issue a ruling. On December 20, 2002 Debtor's counsel informed the Court that the proceeding before Judge Jennemann had been mediated and the disposition was therefore not available. Upon the evidence presented at the hearing, the Court makes the following Findings of Fact and Conclusions of Law.

Debtor filed a Chapter 13 bankruptcy petition on March 4, 1997. At the time of the filing of the petition, Norwest Mortgage, Inc. ("Norwest") was the mortgagee of Debtor's residence.[1] Norwest filed a proof of claim which the clerk's office designated as Claim 5. Claim 5 indicated that Norwest held a secured claim in the amount of $71,832.63 of which $5,944.26 constituted arrearages.[2] However, Norwest mistakenly indicated on Claim 5 that the total amount of the claim was $5,944.26.

On August 12, 1997 Debtor objected to Claim 5 requesting that the claim be disallowed. Debtor's Objection to Claim 5 was served upon Norwest at the address contained in the proof of claim and the Law Offices of David J. Stern, P.A. Norwest did

---

1. Sometime between April 2000 and June 2000 Norwest became Wells Fargo.

2. Norwest's calculation of pre-petition arrearages was comprised of the following: $2,053.26 representing the January, February, and March 1997 payments in the amount of $684.42 monthly, $82.14 in late charges for the January, February, and March 1997 payments, an escrow shortage of $772.11, foreclosure attorney's fees of $1,866.00, accrued late charges of $22.28, a property inspection fee of $8.25, a property preservation fee of $24.75, and $1,115.47 representing the interest over the life of the plan, which Norwest expected to last 60 months.

not file a response to Debtor's Objection to Claim 5. On October 27, 1997 the Court entered Order Sustaining Debtor's Objection to Claim 5, disallowing claim 5. The Order Sustaining Debtor's Objection to Claim 5 was also served upon Norwest and the Law Offices of David J. Stern.

Debtor's Amended Chapter 13 Plan (the "Plan") provided for payments over 36 months. The Plan indicated that Debtor was indebted to Norwest in the approximate amount of $68,000.00. The Plan indicated Debtor would pay the regular monthly payment of $641.91 over the life of the Plan. Additionally, the Plan provided that Debtor was in arrears on her mortgage in the amount of $1,283.82 (representing 2 payments) and that Debtor would pay $35.67 monthly over the life of the plan toward the arrearage.

On October 28, 1997 the Court conducted a confirmation hearing. Norwest did not appear at the confirmation hearing and did not file a written objection to confirmation. In the absence of an objection from Norwest or any other party, the Court confirmed Debtor's Plan. On November 20, 1997 the Court entered Order Confirming Chapter 13 Plan Allowing Claims and Directing Distribution (the "Order Confirming Plan"). Attached to the Order Confirming Plan was Exhibit A, which provided that the principal balance due Norwest was $67,776.71 and the arrearage amount due Norwest was $1,283.82.[3] Norwest did not object to the Confirmation Order.

Debtor testified that her escrow did not change during the pendency of the bankruptcy case. Additionally, at no time during the pendency of the case did Norwest file any pleadings with the Court indicating it had advanced any costs associated with the mortgage. Debtor completed her plan in March 2000. On April 20, 2000 Debtor received a discharge.

Sometime thereafter during 2000 Wells Fargo filed a foreclosure action against Debtor.[4] On September 20, 2000 Wells Fargo voluntarily dismissed the foreclosure action. (Debtor's Ex. 10.) Wells Fargo paid $1,000.00 in attorney's fees to Debtor's attorney and $500.00 in damages to Debtor to settle a sanctions issue raised by Debtor's attorney as a result of the foreclosure action. (Debtor's Ex. 9.)

Between March 2000 and August 2002 Debtor's attorney wrote at least six letters to Norwest and Wells Fargo inquiring as to the status of Debtor's account and attempting to obtain Debtor's payoff amount. The first correspondence was a letter dated March 20, 2000 inquiring as to Debtor's payoff balance. (Debtor's Ex. 16.) The second correspondence was a fax dated June 23, 2000 indicating the amount of payments made by the Chapter 13 Trustee to Norwest on Debtor's behalf and a request that Norwest/Wells Fargo review its records to insure that all of Debtor's payments had been credited. (Debtor's Ex. 2.) The third correspondence was a July 25, 2000 fax which was identical to the June 23, 2000 fax. (Debt-

---

**3.** A review of Claim 5, Debtor's Objection to Claim 5, and Order Sustaining Debtor's Objection to Claim 5 indicates that Debtor objected to the amount of the arrearage claimed by Norwest, but not to the principal balance. Although the Order Sustaining Debtor's Objection to Claim 5 provided for the disallowance of the entire claimed arrearage of $5,944.26, Debtor's Chapter 13 plan (and the Order Confirming Plan) indicated a $1,283.82 arrearage and provided for its cure through

the plan. To the extent there is an inconsistency between the Order Sustaining Debtor's Objection to Claim 5 and the Order Confirming Plan as to the proper amount of arrearage, the Court finds the Order Confirming Plan to be controlling.

**4.** The Law Offices of David J. Stern represented Well Fargo in the post-petition foreclosure action.

or's Ex. 5.) The fourth correspondence was a letter dated July 23, 2001 which indicated that Debtor had received a letter informing her that her principal balance had increased as a result of the addition of attorney's fees for the post-petition foreclosure and attorney's fees for the bankruptcy. (Debtor's Ex. 14.) The letter demanded that the attorney's fees be removed. The fifth correspondence was yet another letter, this one dated July 3, 2002 indicating that Wells Fargo's calculation of Debtor's payoff amount exceeded her balance by approximately $11,000.00, an amount described by Wells Fargo as "allowable corporate advances." (Debtor's Ex. 6.) The letter also requested an itemization of the corporate advances. Finally, the letter reiterated that the attorney's fees assessed as a result of the erroneous post-petition foreclosure and the damages paid to settle the sanctions issue could not be added to the mortgage. The final correspondence was a letter dated August 14, 2002 indicating that a Wells Fargo representative had informed Debtor's attorney's secretary that it did not intend to remove any amounts representing attorney's fees. (Debtor's Ex. 13.) The letter further provided: "So that I may proceed accordingly, would you please fax me a letter which states your position concerning this matter. Upon receipt of your response, I will proceed with whatever remedies are necessary through the bankruptcy and civil courts." Wells Fargo did not respond to any of the letters or faxes sent by Debtor's attorney.

On October 15, 2002 Debtor filed a motion to reopen the case to permit her to file a motion for sanctions against Wells Fargo. On October 16, 2002 the Court entered Order on Motion to Reopen Case. On November 6, 2002 Debtor filed Motion for Sanctions against Wells Fargo by which she seeks compensatory damages, punitive damages, and attorney's fees and costs. Wells Fargo was properly served with the Motion for Sanctions.

At the hearing on the Motion for Sanctions Debtor testified that she desires to refinance her home to take advantage of the current low interest rates but has been unable to do so because of Wells Fargo's refusal to remove the approximate $11,000.00 in "recoverable corporate advances" from her account. Debtor testified that as a result, she has not been able to maintain the upkeep on her home.

At no time during the case did any attorney file a notice of appearance on behalf of Norwest or Wells Fargo.

### CONCLUSIONS OF LAW

The binding effect of confirmation of a Chapter 13 plan is a basic tenet of bankruptcy law. 11 U.S.C. § 1327 provides in pertinent part: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Additionally, upon completion of all payments under the plan, 11 U.S.C. § 1328 provides for the discharge of all debts provided for by the plan.[5] Finally, 11 U.S.C. § 524 prohibits a creditor from attempting to collect a debt that has been discharged.

The Court finds that Debtor's mortgage was current at the conclusion of the case. As provided in the Confirmation Order, the principal balance and the arrearage on Debtor's mortgage as of the date of the filing of the petition were $67,776.71 and $1,283.82, respectively. Debtor made all of her plan payments. Additionally, in light of the fact that no attorney appeared in the case on behalf of Norwest or Wells Fargo, to the extent that any bankruptcy

---

**5.** 11 U.S.C. § 1328 contains certain exceptions, none of which applies here.

attorney's fees were paid, they were paid for nothing. Any assessment therefor is both illegal and fraudulent. Finally, there was no evidence that Norwest advanced any funds on Debtor's behalf during the pendency of the case. Accordingly, to the extent that any of the "recoverable corporate advances" claimed by Wells Fargo represent a pre-petition principal debt in excess of $67,776.71, a pre-petition arrearage in excess of $1,283.82, bankruptcy attorney's fees, or funds advanced during the pendency of the case, they are no longer a debt of Debtor, are hereby stricken, and are not secured by Debtor's mortgage. Wells Fargo and its assignees are forever barred from attempting to claim or collect these "recoverable corporate advances".

Because the Court did not take evidence on the issue of compensatory and punitive damages, the Court will schedule an evidentiary hearing on that matter for **January 23, 2003** at **10:30 a.m.** in **Room 200**, United States Courthouse and Post Office Building, 311 West Monroe Street, Jacksonville, Florida.