**In re Irene PADILLA, Debtor.**

**No. 98–18621ELF.**

United States Bankruptcy Court,
E.D. Pennsylvania.

March 26, 2007.

Brian M. Felgoise, Philadelphia, PA, for Debtor.

## MEMORANDUM OPINION

ERIC L. FRANK, Bankruptcy Judge.

### I. INTRODUCTION

In many chapter 13 bankruptcy cases, the ongoing, postpetition relationship between the debtor and the holder of a residential mortgage determines whether the debtor will be successful in achieving the financial rehabilitation sought in the case. A common, if not the most common, chapter 13 plan proposed is one requiring that a debtor make two types of ongoing payments to reinstate a delinquent mortgage: (1) periodic payments to the chapter 13 trustee over the time period of the chapter 13 plan in amount sufficient to cure a prepetition delinquency ("the Prepetition Delinquency") and (2) continuing performance of the debtor's obligations under the note and mortgage, most notably, payment of the regular monthly instalments as they fall due postpetition ("the Postpetition Obligation").[1]

From the debtor's perspective, full payment of the Prepetition Delinquency through the chapter 13 plan payments and fulfillment of the Postpetition Obligation should result in the cure of the prepetition mortgage delinquency and reinstatement of the mortgage. Many chapter 13 plans expressly so provide.

The Postpetition Obligation may also include other monetary obligations arising postpetition under the loan documents besides the regular monthly instalment payments. Depending upon the terms of the loan documents, those other monetary obligations may include payment of insurance and real estate taxes to third parties (if not satisfied through an escrow component of the monthly instalments paid to the mortgage lender) as well as reimbursement of legal expenses that the mortgage lender may incur postpetition.

A debtor's failure to pay the Postpetition Obligation will likely constitute a breach of the terms of the confirmed chapter 13 plan. *See* 11 U.S.C. § 1322(b)(5) (requiring "maintenance of payments while the case is pending" when a plan proposes to cure a prepetition default). Such a breach may result in the grant of relief from the automatic stay, *see* 11 U.S.C. § 362(d), and the demise of the chapter 13 case. In some cases, however, mortgage lenders wait until after the conclusion of the bankruptcy case to assert that other amounts fell due during the pendency of the bankruptcy case. In such cases, the mortgage lender may assert, *only after the conclusion of the bankruptcy case,* that: (1) the Postpetition Obligation was not fully paid during the pendency of the case and (2) the debtor did not cure the Prepetition Delinquency and reinstate the subject mortgage.

The practice of some mortgage lenders of waiting until after the completion of a chapter 13 bankruptcy case to demand payment of some type of Postpetition Obligation implicates a variety of legal issues, including: (1) whether the bankruptcy court has subject matter jurisdiction to resolve such disputes; (2) whether the creditor has the obligation to provide some

---

1. In some jurisdictions, the monthly instalments are paid by the debtor directly to the mortgage lender, while in other jurisdictions, the debtor pays the chapter 13 trustee who then pays the mortgage lender.

notice during the pendency of the bankruptcy case of the Postpetition Obligation; and (3) whether such conduct violates the terms of the confirmed chapter 13 plan or a specific provision of the Bankruptcy Code.

Within the past ten (10) years, debtor advocates have invoked a variety of legal theories challenging the right of mortgage lenders to make a post-bankruptcy demand for payment of amounts allegedly incurred during the pendency of the bankruptcy case.[2] In particular, debtor advocates have targeted demands for reimbursement of legal expenses allegedly incurred by mortgage lenders during the pendency of the bankruptcy case. Debtor advocates have had mixed success in their efforts to remedy what perhaps they perceive as a systemic problem in the bankruptcy system.

The present case is another in the line of cases in which a debtor challenges the validity of legal expenses incurred before or during a bankruptcy case, but demanded by a mortgage lender after the completion of the bankruptcy case. The Debtor in this case has moved to reopen her bankruptcy case so that she may initiate an adversary proceeding against her former mortgage lender. Although only the motion to reopen is before me, the parties comprehensively briefed many legal issues that go to the merits of the Debtor's complaint.

As explained below, I conclude that based on the facts alleged by the Debtor, she may be entitled to some relief from this court. On that basis, I will reopen this bankruptcy case. However, at this time, I find it unnecessary to resolve other substantial, substantive and significant issues debated by the parties.

## II. BACKGROUND

### A. Procedural History of the Main Bankruptcy Case

On July 7, 1998, the Debtor filed this chapter 13 bankruptcy case. On February 23, 1999, the court entered an Order confirming the Debtor's First Modified Chapter 13 Plan ("the Confirmed Plan").[3] The Confirmed Plan provided for, *inter alia*:

(1) the Debtor to pay the Chapter 13 Trustee ("the Trustee") $175/month for 39 months, for a total of $6,825.00;

(2) all prepetition arrears on the GMAC Mortgage Corporation ("GMACM") mortgage to be paid in full from the plan payments delivered to the Trus-

---

**2.** Debtor advocates have looked to 11 U.S.C. §§ 105(a), 362, 506, 524, 1322(b)(5), 1327, 1328 and various non-bankruptcy consumer protection statutes as affording a substantive basis to remedy what they perceive to be unlawful charges being assessed against their clients. They have also asserted that the creditor conduct constitutes contempt of bankruptcy court orders or statutory injunctions. Some of the cases have been brought as class actions. The common thread in all of the cases is that the debtor's theory, if successful, provides grounds for assessing counsel fees against the creditor. Presumably, debtor advocates believe that the legal remedies which may be available to redress conduct alleged to be inconsistent with a confirmed chapter 13 plan will be ineffectual unless creditors can be assessed counsel fees for conduct because, as a practical matter, most former chapter 13 debtors may be unable to afford to litigate these types of disputes.

**3.** I may take judicial notice of the content of the documents filed in the case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute. *See* Fed.R.Evid. 201; *In re Scholl*, 1998 WL 546607, at *1 n. 1 (Bankr.E.D.Pa., Aug.26, 1998); *See also In re Indian Palms Associates, Ltd.* 61 F.3d 197, 205 (3d Cir. 1995).

tee (including late charges and legal expenses); and

(3) the Debtor to resume making regular monthly mortgage payments to GMACM "according to contract terms."

The mortgage that is the subject of the Confirmed Plan contains an attorney's fee-shifting provision permitting GMACM to charge the Debtor for certain legal expenses, including those incurred in connection with bankruptcy proceedings.[4] *See generally Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co.,* — U.S. ——, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007) (unless subject to a restriction found in the Bankruptcy Code, attorney's fees collectible under applicable state law are allowable in bankruptcy cases). Paragraph 7 of the mortgage provides:

**7. Protection of Lender's Rights in the Property; Mortgage Insurance.**

If Borrower fails to perform the covenants and agreements in this Security Instrument, *or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy* probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and the Lender's rights in the Property. *Lender's actions may include ... paying reasonable attorney's fees....*

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument....

(emphasis added).

The docket entries in this case do not reflect any activity by GMACM prior to the entry of the confirmation order. After confirmation, GMACM filed two motions for relief from the automatic stay—one on February 4, 2000 and the other on March 5, 2002. Both motions were resolved by settlements.[5]

On August 22, 2002, the court entered an Order discharging the Debtor. The bankruptcy case was closed on August 27, 2002.

**B. *Procedural History of the Motion to Reopen***

On July 8, 2005, nearly three (3) years after the case was closed, the Debtor filed a motion to reopen her chapter 13 bankruptcy case. GMACM filed a response to the motion on August 15, 2005. After several continuances, a hearing was held on September 13, 2005. By Order dated October 12, 2005, the court denied the motion to reopen.[6] However, the court

---

4. GMACM attached a copy of the mortgage to its Supplemental Memorandum of Law. Because the Debtor has not questioned the authenticity of the document, I will consider its contents in ruling on the Debtor's motion to reopen. *See In re Madera,* 363 B.R. 718, 719 n. 2 (Bankr.E.D.Pa.2007) (failure to object to evidentiary material submitted in support of summary judgment motion constitutes waiver of objections); *see also Pension Guaranty Corp. v. White Consolidated Industries, Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994) (court may examine an undisputedly authentic document attached to a motion to dismiss complaint if the plaintiff's claims are based on the document).

5. Both motions alleged a default in the Debtor's payment of the postpetition monthly instalments. After the first of the two motions was reported settled, a settlement stipulation was filed and approved by order of the court. After the second motion was reported settled, it was withdrawn by GMACM.

6. Prior to February 14, 2006, all of the proceedings relating to the Debtor's requests to reopen this case were heard by my predecessor on the bench, the Hon. Kevin J. Carey.

granted the Debtor the opportunity to conduct certain "narrowly tailored" discovery and to file an amended motion to reopen by January 11, 2006.

On January 11, 2006, the Debtor filed an amended motion to reopen this case. For unknown reasons, that motion was withdrawn and re-filed, again styled as an amended motion to reopen the case, on January 23, 2006. On January 30, 2006, GMACM filed a response to the amended motion. After several continuances, a hearing on the amended motion was held on April 19, 2006. After the hearing, the Court entered an Order permitting the parties to file memoranda of law in support of their respective positions.

On May 19, 2006, the Debtor filed her Memorandum of Law, accompanied by a second amended motion to reopen the case. On June 19, 2006, GMACM filed a Supplemental Memorandum of Law in opposition to the reopening of the case.[7]

### C. The Debtor's Factual Allegations

In the Motion to Reopen, the Debtor makes the following material allegations:

- During the course of her chapter 13 bankruptcy case, the Debtor paid all of the required payments to the Trustee, as well as all required postpetition payments falling due on the mortgage held by GMACM against her residence.
- GMACM filed no proofs of claim and made no applications to the court for the allowance of post-petition, pre-confirmation attorney's fees and costs.
- Some time after the Debtor received her chapter 13 discharge on August 23, 2002, the Debtor refinanced the mortgage on her residence, resulting in a payoff of the GMACM mortgage.
- Included in the payoff statement ("the Payoff Statement") provided by GMACM were charges totaling $1,551.71, itemized below:
 - bankruptcy costs of: $ 206.50
 - attorney's fee of: $ 184.94
 - bankruptcy fee of: $1,160.27
- The Debtor paid the $1,5571.71 in charges.

Through the discovery authorized by the court's order of October 12, 2005, the Debtor obtained copies of two bills addressed to GMACM from a law firm in Roswell, Georgia named McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC ("McCalla Raymer"). The sum of the two bills is $1,406.50. This amount does not correspond to the $1,551.71 in legal ex-

---

**7.** As GMACM correctly points out, the briefing schedule established by the court after the April 19, 2006 hearing did not contemplate the filing of a further amended motion by the Debtor. Since the Debtor did not seek a hearing on the second amended motion to reopen case, *see* L.B.R. 9014–3, I infer that the Debtor intended the second amended motion to reopen to supplement the most previously filed amended motion to reopen. The second amended motion to reopen includes allegations not found in the amended motion. *See* Debtor's Second Amended Motion to Reopen Case ¶¶ 5, 9–11 (Docket Entry # 113). The Debtor also made corresponding changes in a revised version of the Adversary Complaint that the Debtor proposes to file if the bankruptcy case is reopened. I perceive no prejudice to GMACM by treating the second amended motion to reopen as the operative document in this contested matter. The additional matter in the second amended motion to reopen was discussed during the hearing held on April 19, 2006. Also, GMACM had the opportunity to review the second amended motion well in advance of filing its Supplemental Memorandum of Law on June 19, 2006 and, in fact, addressed the new matter in that memorandum of law. Therefore, in the interest of bringing this phase of the litigation to a conclusion, I will consider the second amended motion to reopen and, for sake of simplicity, in the remainder of this Memorandum Opinion, I will refer to it as the "Motion to Reopen."

penses demanded by GMACM in the payoff statement it sent to the Debtor in connection with the post-bankruptcy, refinancing transaction.[8]

## D. *The Parties' Contentions*

The Debtor asserts that the $1,551.71 in charges were assessed on her mortgage account by GMACM either prior to the filing of the bankruptcy case or during the postpetition, preconfirmation phase of her bankruptcy case.[9] The Debtor contends that GMACM's demand for payment of these charges after the conclusion of the bankruptcy case violated the order confirming the Debtor's chapter 13 plan and/or the Debtor's chapter 13 discharge order.

The Debtor seeks to reopen the case in order to file a "Class Action Adversary Proceeding Seeking Citation of Contempt of Court and for Sanctions" against GMACM ("the Debtor's Proposed Class Action Complaint").[10] The Debtor wishes to represent a class of all debtors who filed chapter 13 bankruptcy cases in this bankruptcy district and were subjected to two (2) types of "wrongful charges" that GMACM allegedly attempted to collect after the entry of their respective chapter 13 discharge orders:

(1) prepetition charges not included in GMACM's proof of claim; and

(2) postpetition, pre-confirmation charges not revealed until after confirmation or after discharge that have not been the subject of an application for approval or the subject of a proof of claim.

Debtor's Proposed Class Action Complaint ¶¶ 8, 18, 37–46 (Docket Entry # 113). As a remedy, the Debtor seeks the imposition

---

**8.** The first bill is dated September 9, 1998, approximately two (2) months after the filing of the Debtor's bankruptcy case, and is in the amount of $810.00. The bill is broken down into unspecified "legal services rendered" in the amount of $800 and a service itemized as "obtaining court dockets" in the amount of $10. The bill preceded the filing of GMACM's proof of claim which, in any event, was filed by GMACM itself and not by counsel. The bill also preceded the filing of either of the motions for relief from the automatic stay, both of which were filed by local Philadelphia counsel and not by McCalla Raymer.

The second bill from McCalla Raymer is dated March 20, 2002, approximately two (2) weeks after filing the second motion for relief from the automatic stay. The bill requests payment of $596.50. The bill is broken down into unspecified "legal services rendered" in the amount of $450 and various costs totaling $196.50.

**9.** I have two observations concerning this allegation.

First, it does not seem likely that the disputed legal expenses were assessed prepetition (but not included in GMACM proof of claim for prepetition arrears). Indeed, the parties have focused almost all of their energies and arguments on the Debtor's claim that the disputed charges were unlawful charges assessed postpetition. The Debtor may have added the allegation that the disputed charges were assessed prepetition simply because her investigation did not enable her to rule out that possibility. It is unfortunate that the discovery permitted by the court did not clarify the nature of the legal expenses at issue and the dates that they were incurred. While it seems unlikely that the disputed charges were assessed prepetition, I cannot fault the Debtor for being cautious.

Second, if the disputed charges were assessed postpetition, the record does not clarify whether they were assessed pre-confirmation or post-confirmation. One of the McCalla Raymer bills suggest that at least some of the expenses were assessed pre-confirmation. The other bill and the fact that GMACM filed two post-confirmation, pre-discharge motions for relief from the automatic stay suggest that at least some of the disputed charges arose post-confirmation. The Debtor alleges only that the disputed charges were assessed pre-confirmation.

**10.** Attached to the Motion to Reopen is the complaint that the Debtor proposes to file if the case is reopened.

of sanctions on a class basis for "contempt of the Court's lawful orders of this district." *Id.* ¶¶ 12–13. The Debtor does not specify precisely what class-wide sanctions she seeks.

Interspersed among the Motion to Reopen, the Debtor's supporting Memorandum of Law and the Debtor's Proposed Class Action Complaint are a variety of legal theories offered by the Debtor, including:

(1) The postdischarge demand of legal expenses incurred *prepetition* violated the confirmation order, the discharge order, as well as 11 U.S.C. §§ 1327, 1328 and 524.[11]

(2) Pursuant to 11 U.S.C. § 506(b) and Fed. R. Bankr.P.2016(a), before assessing the Debtor with any *post-petition, pre-confirmation* legal expenses incurred, GMACM had a legal duty to seek court approval of those charges expenses.[12]

(3) Regardless whether GMACM had a legal duty to seek court approval of any legal expenses incurred *postpetition and pre-confirmation,* the charges were unreasonable and not collectible under applicable law.

(4) The postdischarge demand for payment of postpetition, preconfirmation legal expenses that were not disclosed to the Debtor or the court (e.g., through the filing of a proof of claim or an application for allowance of compensation) violated the confirmation order, the discharge order, as well as 11 U.S.C. §§ 1327, 1328 and § 524.[13]

(5) The alleged violations of the confirmation order, the discharge order, as well as 11 U.S.C. §§ 1327, 1328 and § 524 may be remedied by a legal action under 11 U.S.C. § 105(a).[14]

(6) Alternatively, pursuant to 11 U.S.C. § 105(a), the court may hold GMACM in contempt of the confirmation order and the discharge order.[15]

GMACM responds to the Debtor's request that the bankruptcy case be reopened to permit the filing of the proposed class action complaint with the following arguments:

(1) The bankruptcy court lacks jurisdiction to determine the validity of postpetition legal fees and costs authorized by the Debtor's mortgage.

(2) The case should not be reopened to permit the filing of a Complaint because the Debtor's legal theories are without merit.

(3) In any event, the case should not be reopened to permit the filing of a class action on a contempt theory because contempt claims require individualized and fact specific determinations that are unsuitable for class action treatment.

## III. THE COURT HAS JURISDICTION TO CONSIDER THE DEBTOR'S CLAIMS

I begin with GMACM's argument that this Court lacks jurisdiction to consider

---

11. Debtor's Motion to Reopen ¶ 9; Debtor's Memorandum of Law at 5; Proposed Class Action Complaint ¶ 8.a.

12. Debtor's Memorandum of Law at 8, 12; Debtor's Proposed Class Action Complaint ¶¶ 5, 48–51.

13. Debtor's Motion to Reopen ¶ 9; Debtor's Memorandum of Law at 5, 8–9, 11–14; Proposed Class Action Complaint ¶¶ 8.b.9, 48–51.

14. Debtor's Proposed Class Action Complaint ¶ 46.

15. Debtor's Memorandum of Law at 15–16.

the claims the Debtor seeks to assert as there would be no point in reopening the case if the court lacks jurisdiction over the Debtor's claims. *See generally, Nesbit v. Gears Unlimited, Inc.,* 347 F.3d 72, 76 –77 (3d Cir.2003), *cert. denied,* 541 U.S. 959, 124 S.Ct. 1714, 158 L.Ed.2d 400 (2004) (federal courts have an independent obligation to satisfy themselves that they have subject matter jurisdiction and may raise the issue *sua sponte); Packard v. Provident National Bank,* 994 F.2d 1039, 1049 (3d Cir.), *cert. denied,* 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993) (federal courts are courts of limited jurisdiction, and as such are under a continuing duty to satisfy themselves of their jurisdiction before proceeding to the merits of any case).

### A. *This Case Is Indistinguishable from In re Venuto*

The Debtor's challenge to the validity of the charges assessed by GMACM prior to or during the pendency of the bankruptcy case implicates a fundamental issue that arises regularly in chapter 13 bankruptcy cases—whether the Debtor fully performed her obligations under the Confirmed Plan and effected a cure of the prepetition mortgage delinquency pursuant to 11 U.S.C. § 1322(b)(5) as contemplated by the plan.

Last year, in *In re Venuto,* 343 B.R. 120 (Bankr.E.D.Pa.2006), I held that a bankruptcy court may reopen a closed chapter 13 case and has jurisdiction under 28 U.S.C. § 1334 to determine whether a debtor fully performed his obligations under a confirmed chapter 13 plan. In *Venuto,* the debtors asserted that even though they had cured their prepetition mortgage delinquency through their chapter plan payments, their mortgage lender had resumed foreclosure proceedings after the conclusion of the bankruptcy case. The debtors sought to enjoin a sheriff's sale of their residential real property. In re-

sponse, the mortgage lender disputed whether the debtors had fully performed their chapter 13 plan and therefore, whether a cure of the prepetition delinquency on the mortgage had ever been effected.

In *Venuto,* I raised, *sua sponte,* the question of subject matter jurisdiction. *See, e.g., In re Spree.com Corp.,* 295 B.R. 762, 768 (Bankr.E.D.Pa.2003). To resolve the jurisdictional issue, I turned for guidance to the Court of Appeals' decision in *In re Resorts International, Inc.,* 372 F.3d 154 (3d Cir.2004). From *Resorts International,* I extracted the principle that postdischarge bankruptcy jurisdiction exists if there is a close nexus between the dispute at hand and the bankruptcy plan or proceeding. In particular, jurisdiction exists with respect to disputes "that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *Venuto,* 343 B.R. at 128 (quoting *Resorts International,* 372 F.3d at 166–67).

In many cases, the "quintessence" of a debtor's chapter 13 plan is the proposed cure of a prepetition delinquency on and reinstatement of a residential mortgage. *See id.; accord, In re Wines,* 239 B.R. 703, 707 (Bankr.D.N.J.1999) (cure of mortgage delinquency through chapter 13 plan should restore debtor to pre-default status and put the debtor in the same position as if a default had not occurred). To determine whether a debtor has effected a cure, it may be necessary to make factual determinations and to consider the scope and meaning of the plan, the confirmation order and several Code provisions, including 11 U.S.C. §§ 1322(b)(5), § 1327 and § 1328.

In *Venuto,* I concluded that bankruptcy court jurisdiction existed to determine whether the debtors cured their mortgage default through their chapter 13 plan and whether they were entitled to enjoin the scheduled sheriff's sale of their residence

because "[t]here may be no issue that has a closer nexus to a chapter 13 bankruptcy case." 343 B.R. at 129.[16]

■ I find this case indistinguishable from *Venuto*. Both cases require a determination whether the chapter 13 debtors fully performed their chapter 13 plans. Indeed, in both cases, there is no dispute that the debtors paid all of the plan payments to the chapter 13 trustee required by their confirmed plans. Likewise, the dispute between the parties in both cases is whether the debtors satisfied all of their postpetition contractual obligations to the mortgage lender as of the conclusion of the bankruptcy case.[17] Consistent with *Venuto*, the bankruptcy court in this case has jurisdiction to consider the Debtor's claims.

### B. The Performance of the Debtor's Obligations Under the Mortgage Arising Postpetition Are Part of the Plan, Not "Outside" the Plan

GMACM contends that the court lacks subject matter jurisdiction regarding the validity of legal expenses assessed after the commencement of the bankruptcy case because the dispute is not related to the Confirmed Plan. GMACM argues that the Debtor's Confirmed Plan addressed only the Debtor's "prior arrears" (*i.e.*, the prepetition arrears). GMACM acknowledges that the Confirmed Plan obligated the Debtor to resume monthly instalment payments postpetition "according to contract terms." However, GMACM interprets that provision to express only the intention that GMACM's contractual right to charge postpetition legal fees survive confirmation of the plan. Given the "survival" of the contractual right to assess postpetition legal expenses and the absence of any language in the Confirmed Plan expressly addressing GMACM's right to assess postpetition legal fees or the procedure for doing so, GMACM urges me to find that any postpetition legal expenses assessed by GMACM are "outside" the scope of the Debtor's chapter 13 plan. Based on this characterization of the Confirmed Plan, GMACM reasons that the bankruptcy

16. *But cf. Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1339 (11th Cir.2000), *cert. denied*, 531 U.S. 1073, 121 S.Ct. 765, 148 L.Ed.2d 666 (2001) (attorney's fees allegedly incurred by mortgage lender after confirmation of chapter 13 plan "arose apart from the plan"). Respectfully, I disagree with the *Telfair* court's view that when a debtor is curing a prepetition mortgage default pursuant to 11 U.S.C. § 1322(b)(5), payment of postpetition charges assessed under the terms of the subject mortgage are "apart from" the plan. In any event, *Telfair* is distinguishable. In this case, the Confirmed Plan expressly referred to the obligation to make payments postpetition "according to contractual terms." Thus, even though GMACM's right to assess the Debtor for its legal expenses is grounded in the parties' contract and therefore, in some sense, may have arisen independently from the plan, the Debtor's contractual duties were incorporated into and therefore, made part of the Confirmed Plan.

17. I perceive only two possible differences between the *Venuto* and this case. First, *Venuto* concerned a dispute over the debtors' performance of their postpetition contractual obligation to pay monthly instalment payments and late charges in repayment of the loan. Here, the validity of the Debtors' alleged postpetition contractual obligation to repay GMACM for its postpetition legal expenses is at issue. Second, the debtor in *Venuto* sought injunctive relief to stay an imminent sheriff's sale, *see* Debtor's Proposed Class Action Complaint (prayer for relief, at p. 17). Here, the Debtor seeks money damages.

The differences in the nature of the postpetition contractual obligation and in the requested remedy are inconsequential for purposes of this court's subject matter jurisdiction. What matters is that both cases require a determination whether the debtor fully performed the confirmed plan—in particular, whether the debtor fully performed the postpetition obligations arising under the mortgage loan agreement.

court lacks jurisdiction to address the validity of the postpetition legal expenses at issue. GMACM Supplemental Memorandum of Law at 3–4. I disagree.

This case involves a chapter 13 plan in which the Debtor elected to cure the prepetition default on the mortgage held by GMACM pursuant to 11 U.S.C. § 1322(b)(5).[18] Section 1322(b)(5) has two components: (1) the debtor must make payments that "provide for the curing of any default within a reasonable time;" and (2) the debtor must also provide for "the maintenance of payments while the case is pending." [19]

The fallacy in GMACM's jurisdictional argument is its premise that when a debtor seeks to cure a prepetition mortgage default, the obligation to pay those amounts that fall due postpetition (be they monthly instalments or other charges, such as legal expenses permitted by the mortgage) are outside the scope of a debtor's confirmed plan. By virtue of 11 U.S.C. § 1322(b)(5), the Bankruptcy Code provision authorizing a plan to cure a prepetition default, a debtor's obligation to satisfy the postpetition payment obligations to the mortgage lender, arising during the pendency of her confirmed chapter 13 plan, is an essential element of such a chapter 13 plan. Put another way, any chapter 13 plan designed to cure a prepetition default under § 1322(b)(5) must include, *as part of the plan,* the debtor's obligation to continue making postpetition payments which are required by the parties' contract. Otherwise, the debtor's plan would not satisfy one of the requirements of § 1322(b)(5).

Because a debtor's obligation to perform his postpetition contractual obligations is a

18. A chapter 13 debtor has four (4) options for treatment of a secured claim in a chapter 13 plan. First, the debtor may provide for full payment of the claim. *See* 11 U.S.C. § 1325(a)(5)(B) (statutory provision in its pre-BAPCPA incarnation); *In re Bryant,* 323 B.R. 635, 645 (Bankr.E.D.Pa.2005); *see generally Till v. SCS Credit Corp.,* 541 U.S. 465, 468–469, 124 S.Ct. 1951, 1955, 158 L.Ed.2d 787 (2004) (discussing the methodology for determining the present value of a secured claim being paid in full through a stream of plan payments). Second, the debtor may provide for a "cure" of the prepetition delinquency. *See* 11 U.S.C. § 1322(b)(5); *Sapos v. Provident Institution of Savings,* 967 F.2d 918, 922 (3d Cir.1992) (referring to § 1322(b)(5) as a "cure and maintain" alternative to full payment of a secured claim). *See generally* 2 Keith M. Lundin, *Chapter 13 Bankruptcy* ¶ 101.1 (3d ed.2004). Third, the Debtor can surrender the secured property to the secured creditor. 11 U.S.C. § 1325(a)(5)(C). Finally, the debtor may choose to "not provide" for the secured claim at all, in which case the claim and the lien pass through the bankruptcy case unaffected. *See In re Waldman,* 75 B.R. 1005 (Bankr.E.D.Pa.1987); 8 *Collier on Bankruptcy* ¶ 1322.06[1][a] (15th rev. ed.2006); *see generally Lellock v. Prudential Ins. Co.,* 811 F.2d 186 (3d Cir.1987) (even though underlying debt is discharged, lien created by the debt is not affected by the discharge order); *Matter of Tarnow,* 749 F.2d 464 (7th Cir.1984) (a creditor's lien is not affected by the bankruptcy discharge, unless the lien is modified during the case pursuant to a specific Code provision, such as 11 U.S.C. §§ 522(f) or 1322(b)(2)).

In this case, while the Debtor's Confirmed Plan does not cite 11 U.S.C. § 1322(b)(5), there can be no doubting the Debtor's intent to invoke § 1322(b)(5) in her plan's treatment of GMACM's secured claim. The Confirmed Plan simply used the words "[a]ll prior arrears ... shall be paid in full" instead of the statutory words "curing a default" and the words "making regular monthly payments ... according to contractual terms" instead of the statutory phrase "maintenance of payments while the case is pending." This slight variation from the statutory language does not alter the Debtor's obvious intent to invoke 11 U.S.C. § 1322(b)(5).

19. In addition, for a debtor to invoke the right to cure a default under § 1322(b)(5), the claim must be one "on which the last payment is due after the date on which the final payment under the plan is due."

statutory requirement for effecting a cure of a prepetition delinquency under § 1322(b)(5), it is a misstatement to refer to a debtor's postpetition contractual payments as being "outside the plan," as GMACM urges. It follows that a debtor's contractual postpetition payments are made *pursuant to the plan, not outside the plan.*

As the court explained in *In re Perez,* 339 B.R. 385 (Bankr.S.D.Tex.2006):

> The term "under the plan" properly refers to any payment made pursuant to the provisions of a Chapter 13 plan, regardless of whether such payment is made through the trustee or by a debtor directly to a creditor. Unfortunately, over the years, certain nomenclature has evolved which has led to confusion over the meaning of the phrase "under the plan." The term "outside the plan" is bankruptcy parlance that has been used to describe a [postpetition mortgage] payment made by a debtor directly to a creditor without going through the Chapter 13 trustee. Some practitioners and courts believe that making a payment "outside the plan" means that the payment is not made "under the plan." Conversely, the term "inside the plan" has been used to describe a payment made by a debtor through the trustee, and some practitioners and courts believe that only such payments as these are made "under the plan." This Court disagrees with both of these views. Every Chapter 13 plan which this Court has reviewed reflects which claims will

be paid through the trustee and which claims will be paid directly by the debtor; therefore, *when the plan is confirmed, all payments that are referenced in the plan, regardless of whether they are made by the trustee or directly by the debtor, are payments made "under the plan."* For these reasons, the Court believes that the use of the terms "outside the plan" and "inside the plan" are confusing. It would be preferable to discard the use of these two phrases and, instead, use the phrases "payments through the trustee" and "direct payments by the debtor"—all of which are payments made "under the plan."

*Id.* at 390 n. 4 (citations omitted) (emphasis added); *accord, In re Venuto,* 343 B.R. at 133 n. 21.

In addition, any possible doubt regarding the scope of the Debtor's Confirmed Plan is resolved by its express language. The Confirmed Plan specified that postpetition payments to GMACM were to be "according to contractual terms." These words served to incorporate by reference into the Confirmed Plan the Debtor's postpetition obligations under the mortgage. Thus, by the terms of the Confirmed Plan itself, the Debtor's obligations under the plan must be measured, in part, by the terms of the mortgage contract.

For these reasons, the bankruptcy court has jurisdiction to consider the Debtor's claims that she fully performed her postpetition, contractual obligations under the Confirmed Plan that arose during the pendency of the chapter 13 case.[20] However,

---

**20.** I note that for cases filed on or after October 17, 2005, 11 U.S.C. § 524(i), added to the Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, § 1227(b), 119 Stat. 23 (2005). Section 524(i) provides that in certain circumstances, a creditor's failure to credit payments received under a confirmed plan in the manner required by the

plan, "shall constitute a violation of an injunction under [§ 524(a)(2)]." If a debtor asserts a claim under § 524(i), the jurisdictional analysis changes. The existence of bankruptcy court jurisdiction to resolve disputes arising under § 524(i) is manifest. *See* 28 U.S.C. § 1334(b) (providing for jurisdiction in proceeding "arising under title 11" or "arising in" cases under title 11). As the case *sub*

the existence of subject matter jurisdiction does not necessarily mean that the court must reopen the case and exercise its jurisdiction. *See In re Otto*, 311 B.R. at 47 (referring to exercise of court's discretion based on circumstances of the individual case); *see also* 28 U.S.C. § 1334(c)(1) (permitting abstention "in the interest of justice"). I turn next to the determination whether the court's subject matter jurisdiction should be exercised.

## IV. THE MERITS OF THE MOTION TO REOPEN

### A. Legal Standards for Reopening a Closed Bankruptcy Case

Section 350(b) of the Bankruptcy Code provides that a bankruptcy case may be reopened "to administer assets, to accord relief to the debtor or for other cause." 11 U.S.C. § 350(b).

█ The decision to reopen the case is within the broad discretion of the bankruptcy court. *In re Zinchiak*, 406 F.3d 214, 223 (3d Cir.2005). A decision by a bankruptcy court to reopen a case under § 350(b) is reviewed for abuse of discretion. *Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir.1997); *Judd v. Wolfe*, 78 F.3d 110, 116 (3d Cir.1996).

█ Section 350(b) specifically makes reference to the reopening of a case "to accord relief to the debtor." Based on the statutory text, it generally is appropriate to exercise my discretion to reopen a case to consider affording relief to a debtor who asserts a right provided under title 11 or in a prior order of this court. *In re Dodge*, 138 B.R. 602 (Bankr.E.D.Cal.1992); *see also In re Searles*, 70 B.R. 266 (D.R.I. 1987). Nevertheless, the moving party— in this case, the Debtor—has the burden of demonstrating the existence of circumstances sufficient to justify the reopening of the case. *E.g., In re Otto*, 311 B.R. 43, 47 (Bankr.E.D.Pa.2004).

█ Further, as explained in *Otto* by my colleague, Judge Fox, there are various considerations to guide the exercise of the court's discretion in determining the propriety of reopening the case. They include:

(1) the length of time that the case was closed;

(2) whether a non-bankruptcy forum, such as state court, has the ability to determine the issue sought to be posed by the debtor;

(3) whether prior litigation in bankruptcy court implicitly determined that the state court would be the appropriate forum to determine the rights, post-bankruptcy, of the parties;

(4) whether any parties would be prejudiced were the case reopened or not reopened;

(5) the extent of the benefit which the debtor seeks to achieve by reopening; and

(6) whether it is clear at the outset that the debtor would not be entitled to any relief after the case were reopened.

*Id.*

GMACM's opposition to the Debtor's Motion to Reopen focuses largely on the last consideration. In effect, GMACM asserts that no purpose would be served by reopening the case either because this court lacks jurisdiction over the Debtor's claims or because the Debtor's claims, in any event, lack merit.

### B. The Bankruptcy Case Will Be Reopened

The Debtor's basic claim in this dispute is that the charges demanded in the Payoff

*judice* was filed prior to October 17, 2005, § 524(i) is not applicable.

Statement that she received from GMACM after the conclusion of the bankruptcy case were unlawful. Having paid them, presumably in order to pass clear title to the buyer in the real estate sale transaction, she is seeking her money back from GMACM.

In the Motion to Reopen and her supporting Memorandum of Law, the Debtor has articulated several different legal theories in support of her claim. In its opposition, GMACM disputes the merits of each and every legal theory set out by the Debtor. From GMACM's perspective, since all of the Debtor's theories are specious, no purpose would be served by reopening the case.

 I conclude that the Debtor has set forth facts which, if proven, may entitle her to some relief from this court. Therefore, I consider it appropriate in the exercise of my discretion to grant the motion to reopen the bankruptcy case. I emphasize, however, the limited scope of my ruling. I find it unnecessary, at this time, to resolve many of the significant legal issues briefed by the parties. I consider it far more appropriate to decide those issues in the context of any adversary proceeding that the Debtor may initiate in the future.[21]

Below, I will further explain the basis for my ruling. Also, for the benefit of the parties, I will identify certain significant issues which need not, and will not, be determined at this time.

### 1. The Court's Discretion Will Be Exercised In Favor of Reopening this Case

I find it appropriate to reopen the case to provide the Debtor with the opportunity to assert a claim for recovery of some or all of the disputed charges in the Payoff Statement. At least three (3) of the considerations identified in *Otto* militate in favor of reopening the case.

First, I see no prejudice to any party if the case is reopened. Second, there was no prior litigation in the bankruptcy court determining that the state court would be the appropriate forum to determine the rights, post-bankruptcy, of the parties. Third, as discussed below in Parts IV.B.2 and 3, it is *not* clear at the outset that the debtor would not be entitled to any relief after the case were reopened.

The only factor favoring denial of the Motion is the availability of relief in state court.[22] However, on balance, given the issues being raised, several of which may require construction of the Bankruptcy Code and the rules of this court, I conclude the better course is to reopen the case[23].

---

21. I recognize that deferring decision on certain issues necessarily results in some duplication of effort by the parties. However, while the parties have treated the motion to reopen as if it were a motion to dismiss the Debtor's Proposed Class Action Complaint under Fed. R. Bankr.P. 12(b)(6), the Complaint is not truly before me; only the motion to reopen the bankruptcy case is before me. Once I have determined that the bankruptcy case should be reopened, it is simply unnecessary for me to rule on the merits of the many claims asserted. My discomfort in doing so is exacerbated by the significance and complexity of the legal issues involved.

22. Two of the *Otto* factors are relatively neutral. The case was closed for almost three (3) years before the Motion to Reopen was filed. I consider this to be a relatively substantial, but not inordinately lengthy, amount of time. As for the extent of the benefit sought by the Debtor, her monetary claim of $1,551.71 is relatively modest in absolute terms. Yet, it may also be characterized as substantial to a debtor of modest means.

23. Resolution of the Debtor's claims may require a relatively sophisticated analysis of the Bankruptcy Code and the rules of court. In a sense, the situation presented is the flip side of 28 U.S.C. § 1334(c), which authorizes a

## 2. If the Disputed Charges Were Prepetition Charges, the Debtor May Be Entitled to Relief from this Court

Earlier, I explained that the basis of the court's subject matter jurisdiction lies in the Debtor's argument that GMACM's demand for payment of $1,551.71 in charges assessed either before or during the bankruptcy case was inconsistent with the Debtor's confirmed chapter 13 plan. I conclude that the Debtor's allegations, if proven, give rise to a right to relief from this court to enforce the terms of the Confirmed Plan.

A confirmed plan has been likened to a "court approved contract or consent decree." *In re McDonald*, 336 B.R. 380, 384 (Bankr.N.D.Ill.2006); *accord*, *In re Turek*, 346 B.R. 350, 354–55 (Bankr.M.D.Pa.2006); *In re Miller*, 325 B.R. 539, 543 (Bankr. W.D.Pa.2005); *In re Bryant*, 323 B.R. 635, 639 (Bankr.E.D.Pa.2005). Upon entry of the confirmation order, GMACM was bound by the terms of the Confirmed Plan. *See* 11 U.S.C. § 1327.

If the charges in dispute in this case were prepetition charges that were not included in GMACM's proof of claim, GMACM's attempt to collect such charges after the Debtor's completion of her chapter 13 plan violated the terms of the Confirmed Plan. This is because GMACM was "bound by the claim it filed, as treated under the terms of the confirmed plan." *See In re Pitts*, 354 B.R. 58, 66 (Bankr. E.D.Pa.2006). Once a debtor has completed performance of his obligations under a confirmed chapter 13 plan (which includes payment of both the prepetition arrears set forth in the proof of claim and the postpetition payments falling due while the case is pending, in accordance with 11 U.S.C. § 1322(b)(5)), the Debtor is entitled to reinstatement of the mortgage. *In re McDonald*, 336 B.R. at 386. A lender may not assert that additional amounts were in arrears prepetition after completion of a confirmed chapter 13 plan. *In re Pitts*, 354 B.R. at 66; *see In re Riser*, 289 B.R. 201 (Bankr.M.D.Fla.2003).[24]

bankruptcy court to abstain from hearing matters within its jurisdiction "in the interest of justice, or in the interest of comity with State courts or respect for State law." *See, e.g.*, *In re Stephen Smith Home for the Aged, Inc.*, 80 B.R. 678, 685 (E.D.Pa.1987) (discussing propriety of bankruptcy court deferral to specialized state forum). It makes more sense for the bankruptcy issues raised by the Debtor to be determined by the bankruptcy court—a specialized court far more familiar with bankruptcy practice, procedure and substantive concepts—than a state trial court of general jurisdiction.

24. The Debtor also frames the claim as a violation of the discharge provision 11 U.S.C. § 524. *See* Debtor's Memorandum of Law at 14–15; Debtor's Proposed Class Action Complaint ¶¶ 4.b, 50.b. I do not understand the Debtor's legal theory. After completion of plan payments under a confirmed chapter 13 plan, a debtor is entitled to a chapter 13 discharge pursuant to 11 U.S.C. § 1328(a).

Section 1328(a)(1) excepts from the discharge any debt "provided for under section 1322(b)(5)." Because the Debtor's plan provided for GMACM's claim under § 1322(b)(5), it follows that the Debtor's debt to GMACM was not discharged. *E.g.*, *Smith v. Keycorp Mortgage, Inc.*, 151 B.R. 870, 877 (N.D.Ill. 1993). Therefore, I fail to see the relevance of § 524 in this case. The source of legal authority which would prohibit GMACM from attempting to collect money that was due and unpaid at the time of the bankruptcy filing and that was not included in its proof of claim, must be grounded in the concept of a "cure" under 11 U.S.C. § 1322(b)(5), the terms of the confirmed plan and 11 U.S.C. § 1327.

As noted above, *see* n. 20, *supra*, BAPCPA has altered this conceptual framework somewhat. The Code now provides that, by definition, certain conduct that is inconsistent with the terms of a confirmed plan will be deemed to be a violation of the statutory injunction set forth in § 524(a)(2). *See* 11 U.S.C. § 524(i).

In this case, while I have expressed some doubt that the disputed charges were, in fact, prepetition charges, *see* nn. 8–9, *supra* & accompanying text, the Debtor intends to make that allegation and may yet be able to prove it. Thus, I cannot say that it is "clear at the outset," *see Otto,* 311 B.R. at 47, that the Debtor would not be entitled to relief if the case were reopened.

### 3. *If the Disputed Charges Were Postpetition Charges, the Debtor May Be Entitled to Relief from this Court*

Based on the information the Debtor has been able to garner thus far, it seems likely that charges in dispute were assessed by GMACM for legal expenses incurred postpetition during the pendency of the case. If so, the Debtor has stated a possible basis for relief justifying the reopening this bankruptcy case.

Paragraph 7 of the mortgage obligates the Debtor to reimburse GMACM for "reasonable attorney's fees" expended when GMACM takes action to protect its interest in the mortgaged property.[25] The Debtor contends that the $1,551.71 demanded in the Payoff Statement was not reasonable. (N.T. 6, 32–33, April 19, 2006).

I cannot rule out the possibility that the Debtor can establish that the disputed charges were excessive. Based on the present record, the relationship between the invoices for legal services produced by GMACM and the legal work done on GMACM's behalf in the bankruptcy case is hardly clear. Further, the amount demanded in the Payoff Statement does not fully reconcile with invoices produced. *See* n. 8, *supra* & accompanying text. Therefore, I am satisfied that the Debtor has met her burden of putting the *bona fides* of the attorney's at issue so as to merit the reopening of the case.

### 4. *The Court Need Not Reach Other Issues Briefed by the Parties*

Because I conclude that the Debtor may have grounds for relief from this court based on her assertion that GMACM's demand for payment of the disputed legal expenses violated the terms of the Confirmed Plan (regardless whether they were incurred prepetition or postpetition), it is unnecessary to decide several significant legal issues vigorously debated by the parties in their briefs. I write further only to emphasize the limited grounds for my decision.

For example, I find it unnecessary at this time to decide the exact nature of the remedy that may be available to the Debtor. While the bankruptcy court has the authority to enforce the terms of a confirmed plan, it does not necessarily follow, as the Debtor seems to assume, that creditor conduct that is inconsistent with a con-

---

Thus, in some circumstances § 524(i) provides debtors with a statutory contempt remedy for violations of a confirmed plan. However, this case preceded the effective date of BAPCPA and § 524(i) is inapplicable.

**25.** The contractual provision is consistent with Pennsylvania law.

It has long been the law in Pennsylvania that a contractual attorneys' fee-shifting provision is enforceable only to compensate a plaintiff for the reasonable and necessary expense of collection and that the amount allowed is within the discretion of the court. *E.g., Lindley v. Ross,* 137 Pa. 629, 20 A. 944 (1890). Such contractual provisions are subject to the court's equitable control and should not be enforced to the extent that they would result in an award in excess of a reasonable rate. *See Jarvis v. Stoffal,* 54 Pa.Super. 362, 1913 WL 4796 (1913); *accord, In re West Chestnut Realty of Haverford, Inc.,* 186 B.R. 612 (Bankr.E.D.Pa. 1995). *In re Gordon–Brown,* 340 B.R. 751, 755 n. 6 (Bankr.E.D.Pa.2006).

firmed plan constitutes contempt of the confirmation order or contempt under 11 U.S.C. § 1327.

Further, I need not determine at this time whether the challenged legal expenses (if assessed postpetition/pre-confirmation) are inherently unreasonable and unlawful because they were assessed without bankruptcy court approval. There is certainly some case law that provides support for the Debtor's position. *See In re Padgett*, 268 B.R. 309 (S.D.Fla.2001) (cited with approval in *In re Craig–Likely*, No. 06–13655 (E.D.Mich. March 2, 2007) (presently unreported)); *see also In re Madison*, 337 B.R. 99 (Bankr.N.D.Miss.2006); *In re Riser*, 298 B.R. 469 (Bankr.M.D.Fla. 2003); *In re Noletto*, 281 B.R. 36 (Bankr. S.D.Ala.2000). However, to ascertain whether a creditor has a duty to seek court approval of postpetition legal expenses assessed pursuant to a fee-shifting provision of a contract that is being cured in a chapter 13 plan, it is necessary to consider the effect, if any, of: (1) several Code provisions (e.g., 11 U.S.C. §§ 506, 1306, 1322(b)(5), 1322(e), 1327, 1328); (2) the Federal Rules of Bankruptcy Procedure (e.g., Rule 2016(a)); (3) the terms of the confirmed chapter 13 plan and (4) the precise procedural history of the case (e.g., whether the disputed charges were incurred pre-confirmation or post-confirmation). In other words, there is a significant degree of complexity to the issue. I consider it inappropriate to engage in the legal analysis needed to resolve the Debtor's claim based on the present, substantially undeveloped, record.

Also, the Debtor wishes to bring her claims as a class action. There are a number of thorny issues with this approach. In *In re Joubert*, 411 F.3d 452 (3d Cir.2005), the debtor filed a class action, challenging a creditor's allegedly systemic assessment of a postpetition/preconfirma-tion charges alleged to have been imposed in violation of 11 U.S.C. § 506(b). The Third Circuit held that 11 U.S.C. § 105(a) does not provide a private right of action to remedy violations of 11 U.S.C. § 506 and affirmed the dismissal of the debtor's class action complaint. *Id.* at 455. In *Joubert*, the court also stated in dicta its approval of the line of cases holding that § 105(a) does not authorize private rights of action to remedy bankruptcy discharge violations. *Id.* at 456.

While I make no definitive ruling at this time, the court's reasoning in *Joubert* would appear to dispose of the class action claims for the alleged violations of 11 U.S.C. §§ 524 and 1328 set forth in the Debtor's proposed and as yet unfiled class action complaint. *Accord, Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507, 510 (9th Cir.2002) (there is no implied private right of action under 11 U.S.C. § 524 and § 105 does not creates a private right of action for violations of § 524). Nor has the Debtor articulated why the same reasoning would not be fatal to a class action claim that GMACM has violated 11 U.S.C. 1327. *See Guetling v. Household Financial Services, Inc.*, 312 B.R. 699, 704 (M.D.Fla.2004) (no private right of action under 11 U.S.C. § 1327 or § 1328, although violations of those provisions may be otherwise remediable through "contempt, equitable or other relief"). However, I do not reach these issues. Nor do I decide whether class wide relief may be otherwise available in the absence of a private right of action.

Similarly, there is considerable doubt about the Debtor's ability to maintain a class action on the theory that the postpetition legal expenses assessed by GMACM were "unreasonable" and thereby unlawful under the mortgage and the Confirmed Plan. *See Dawson v. Dovenmuehle Mortgage, Inc.*, 214 F.R.D. 196 (E.D.Pa.2003);

*In re Noletto,* 281 B.R. at 47–48. Again, while I make no definitive ruling, the Debtor should consider, in framing the relief she seeks, whether a challenge to the reasonableness of a legal fee under a contractual fee-shifting provision may require such an individualized inquiry into the facts and circumstances of each class member as to fail to satisfy either Fed.R.Civ.P. 23(a) or (b).[26]

## V. CONCLUSION

For the reasons set forth above, I will reopen the bankruptcy case and give the Debtor a reasonable period of time to file an adversary complaint.

### ORDER

**AND NOW,** upon consideration of the Debtor's motion to reopen chapter 13 bankruptcy case (docket entry # 113), the response of GMAC Mortgage Corporation and for the reasons set forth in the accompanying Memorandum, Opinion, it is hereby **ORDERED** that:

1. The motion is **GRANTED.**

2. The above-captioned chapter 13 bankruptcy case is **REOPENED.**

3. The Debtor is granted leave to file an adversary complaint pursuant to Fed. R. Bankr.P. 7001, provided that such complaint shall be filed on or before **April 20, 2007.**

---

**26.** Fed.R.Civ.P. 23 is incorporated by reference in adversary proceedings by Fed. R. Bankr.P. 7023. Rule 23(a) provides a party may bring a class action only if, *inter alia,* there are questions of law or fact that are "common to the class" and the party's claims are "typical" of the claims or defenses of the class. Fed.R.Civ.P. 23(a)(2), (3). Rule 23(b) provides, *inter alia,* that a class action may be maintained only if questions of law or fact common to the class members "predominate" over questions affecting only individual class members.