**In re Joanne L. RISER, Debtor.**

**No. 97–1575–3F3.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 6, 2003.

Leon M. Boyajan, II, Inverness, FL, for Debtor.

### *ORDER IMPOSING SANCTIONS AGAINST WELLS FARGO HOME MORTGAGE, INC. FOR VIOLATION OF THE DISCHARGE INJUNCTION*

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court upon Debtor's Motion for Sanctions against Wells Fargo Home Mortgage, Inc. ("Wells Fargo"). The Court previously entered Findings of Fact and Conclusions of Law in which it detailed Debtor's and Debtor's attorney's extensive post-discharge efforts to resolve an approximate $11,000.00 discrepancy between Debtor's actual mortgage debt and the debt reflected on Debtor's mortgage statements.[1] The Court held that the "recoverable corporate advances" claimed by Wells Fargo were not a debt of Debtor and were not secured by Debtor's mortgage. The Court struck the "recoverable corporate advances" and barred Wells Fargo and its assignees from attempting to collect or claim them. The

---

1. The opinion is at 289 B.R. 201.

Court scheduled a later hearing on the issue of compensatory and punitive damages. Debtor and her attorney appeared at the hearing. The Court instructed Debtor and her attorney to submit affidavits attesting to Debtor's damages. Debtor seeks $538.86 in damages as a result of missed work and an additional $422.60 for twenty hours she spent calling Wells Fargo, accumulating the information necessary for her attorney to prepare the motion, and preparing for the hearings. Debtor also seeks attorney's fees of $13,925.00 and costs of $223.54.

### Discharge Injunction

■ Section 524 of the Bankruptcy Code operates as a post-discharge injunction against the collection of debts discharged in bankruptcy and is thus the embodiment of the Code's fresh start concept. *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1388 1389 (11th Cir. 1996). Section 524 provides in relevant part:

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

■ Although § 524 does not explicitly authorize monetary damages for a viola-

tion of the discharge injunction, a court may award actual damages pursuant to the statutory contempt powers set forth in 11 U.S.C. § 105. *In re Shoe*, 2002 WL 31051587 (Bankr.M.D.N.C.2002) citing *Hardy*, 97 F.3d at 1389–1390. In addition to the statutory contempt powers set forth in § 105, all courts have inherent contempt powers. *Jove Eng'g, Inc. v. Internal Revenue Service (In re Jove Eng'g, Inc.)*, 92 F.3d 1539, 1543 (11th Cir.1996).[2] However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). In *Hardy* the Eleventh Circuit exercised the caution urged by the Court in *Chambers*. *Hardy* involved a contempt complaint requesting sanctions pursuant to § 105 against the Internal Revenue Service for violation of § 524's discharge injunction. The Court noted: "Instead of grounding liability for violation of the permanent stay in the court's inherent contempt powers and § 524, we exercise the caution recommended by the Court in *Chambers* and rely on the other available avenue for relief, statutory contempt powers under § 105." *Id.* at 1389. The Court will exercise similar caution and rely on its statutory contempt powers under § 105 rather than its inherent contempt powers to deal with the Motion for Sanctions.

■ A [creditor] may be liable for contempt under § 105 if it willfully violates § 524's permanent injunction. *Jove*, 92 F.3d at 1553–1554. A creditor's conduct in violating the discharge injunction is willful if the creditor: 1) knew that the discharge injunction was invoked and 2) intended the actions which violated the discharge injunction. *Hardy*, 97 F.3d at 1390. Wells

**2.** The imposition of sanctions pursuant to a court's inherent contempt powers requires a showing that the contemnor acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1575 (11th Cir.1995).

Fargo was clearly aware that the discharge injunction was invoked because Norwest was served with a copy of the April 20, 2000 Order Discharging Debtor.[3] Additionally, in October 2000 Wells Fargo paid $1,500.00 in sanctions to Debtor and her attorney to settle Debtor's claim that Wells Fargo's post-discharge foreclosure proceeding against Debtor was in contempt of the discharge injunction. Finally, Debtor's attorney's July 23, 2001 letter to Wells Fargo reiterated that Debtor had received a discharge and that Wells Fargo's conduct was a continuing violation of the discharge injunction. Additionally, it is clear that Wells Fargo's actions: 1) in repeatedly sending Debtor mortgage statements which included approximately $11,000.00 of discharged debt and 2) in refusing or failing to remove the discharged debt from Debtor's account were intentional. Accordingly, Debtor is entitled to an award of damages resulting from Wells Fargo's violation of the discharge injunction.

█ Debtor seeks $538.86 in damages as a result of missed work. Debtor testified that she missed ten hours of work at an hourly rate of $21.13 to prepare for the hearings on this matter and two days of work at a daily salary of $163.78 to attend the hearings. The Court will award Debtor $538.86 in damages as a result of missed work. Debtor testified that she spent an additional twenty hours (during non-working hours) calling Wells Fargo, accumulating the information necessary for her attorney to prepare the motion, and preparing for the hearings. The Court will not award damages as a result of these efforts because, unlike the time she took off from work, Debtor did not suffer any loss therefrom. Stated another way, Debtor did not forfeit any compensation in order to engage in these efforts.

█ Debtor also seeks attorney's fees of $13,925.00 and costs of $223.54.[4] Debtor's attorney submitted a detailed project billing statement concerning his attempts to obtain Debtor's proper payoff amount and to persuade Wells Fargo to comply with the discharge injunction by removing the erroneously assessed "recoverable corporate advances" from Debtor's account. The billing statement set forth the specific tasks that Debtor's attorney performed, the date such tasks were performed, and the number of hours devoted to each specific task. Only fees and expenses actually caused by a violation of the discharge injunction are assessable as a sanction therefor. Cf. Tollett v. City of Kemah, 285 F.3d 357 (5th Cir.2002) (holding that attorney's fees not caused by discovery violation were not included in sanctions award). Because they were not caused by Well's Fargo's violation of the discharge injunction, the Court will not include the fees and costs incurred prior to April 20, 2000, the date of Debtor's discharge.

The Court must determine a reasonable hourly rate for Debtor's attorney's services. A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. Blum v. Stenson, 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The applicant bears the burden of producing satisfactory evidence that the requested rate is in line

---

3. In its Findings of Fact the Court noted that Norwest became Wells Fargo sometime between April, 2000 and June, 2000. The Discharge Order was served on Norwest at the address listed on its proof of claim.

4. Debtor's attorney asserts that he spent 55.70 hours on this matter and requests an hourly rate of $250.00.

with the prevailing market rate. *NAACP v. City of Evergreen,* 812 F.2d 1332, 1338 (11th Cir.1987). The Court finds that a reasonable hourly rate for Debtor's attorney's services is $200.00 per hour.

The Court will award Debtor attorney's fees and costs in the amount of $10,999.28. The Court calculated this figure by adding attorney's fees of $10,780.00 (obtained by multiplying the necessary hours of 53.9 by a reasonable hourly rate of $200.00) and costs of $219.28.

 Debtor's Motion for Sanctions includes a request for punitive damages. "The purpose of civil contempt sanctions is to (1) compensate the complainant for losses and expenses it incurred because of the contemptuous act, and (2) coerce the contemnor into complying with the court order." *Jove,* 92 F.3d at 1557. Pursuant to its statutory contempt powers under § 105, a court may impose coercive but not punitive sanctions. *Hardy,* 97 F.3d at 1390 citing *Jove,* 92 F.3d at 1557–58. Accordingly, the Court is without authority to impose punitive damages against Wells Fargo pursuant to § 105. Upon the foregoing, it is

**ORDERED:**

1. The Court imposes sanctions against Wells Fargo Home Mortgage, Inc. in the amount of $11,538.14.

2. Wells Fargo Home Mortgage, Inc. shall pay $538.86 to Debtor within thirty days of the date of this Order.

3. Wells Fargo Home Mortgage, Inc. shall pay $10,999.28 to Leon M. Boyajan, Debtor's attorney, within thirty days of the date of this Order.

4. If Wells Fargo Home Mortgage, Inc. does not tender payment of the above sums within thirty days of the date of this Order, upon a motion accompanied by an affidavit setting forth the default in payment and

without further notice or hearing, the Court will enter a judgment in favor of Debtor and Leon M. Boyajan and against Wells Fargo Home Mortgage, Inc. for which execution will issue.