In re LARRY R. TAYLOR, Debtor.

No. 04–1451.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Nov. 9, 2007.

Wendell Finner, Wendell Finner, PA, Jacksonville, FL, for Debtor.

Miriam G. Suarez, Timothy S Laffredi, Orlando, FL, for U.S. Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case is before the Court upon Debtor's Motion to Require Wells Fargo Home Mortgage, Inc., to Comply with Plan, to Hold it in Contempt for Discharge Violations, and to Award Costs and Fees for Vexatiously Multiplying Litigation. After an evidentiary hearing held on August 16, 2007, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Larry R. Taylor ("the Debtor") filed for Chapter 11 relief on February 13, 2004. (D. Ex. 1). Debtor owns at least 10 residential rental properties in Jacksonville, Florida. Debtor's motion concerns two of the properties, one located at 728 Shearer St. ("the Shearer Property"), and the other at 11218 Rustic Pines Blvd. ("the Rustic Property"). Wells Fargo Home Mortgage, Inc., ("the Creditor") is the mortgagee for both properties. (Cr. Ex. 5). Pursuant to Debtor's First Amended Plan ("the Plan"), Creditor's allowed secured claims are dealt with in Class 4, and section 5.04 of the Plan details the treatment of Class 4 claims as follows (in part):

> Each of [Creditor's] claims will be paid in 360 equal monthly payments ... which payments will include interest at the rate of seven percent (7%) per annum to each Claimant in this Class whose Claim exceeds the value of the property securing such claim. Unless a Claimant in this class has filed a motion to value the collateral securing its claim, the value of the property securing the claims ... shall be exactly equal to the value of the Allowed Claim secured thereby.[1] (D. Ex. 5).

On March 22, 2005, the Court held a hearing regarding confirmation of the Plan. At the hearing, the Court: (i) found that the requirements of § 1129(a) had been met, except for acceptance of the Plan by impaired classes of creditors; and (ii) advised Debtor that he had 10 days to file motions pursuant to § 1129(b). Short-

1. In pertinent part, section 1.01 of the Plan defines the term, "Allowed Claim" as follows:

 A right against the Debtor ... in respect of which a proof of claim has been filed ... within the period of limitation fixed by Rule 3003 or scheduled in the list of creditors ... and not listed as disputed, contingent or unliquidated as to amount ... When the context so requires, Allowed Claim shall include Disputed Claims to the extent such Disputed Claims become allowed ... Unless otherwise specified in the Plan or in a Final Order of the Bankruptcy Court ... "Allowed Claim" shall not include (a) interest on the amount of such Claim accruing from and after the Filing Date, (b) punitive or exemplary damages or (c) any fine, penalty or forfeiture. (D. Ex. 5).

ly thereafter, Debtor filed a motion under § 1129(b), requesting confirmation of the Plan.

On October 14, 2005, Debtor filed Claim No. 30 on behalf of Creditor for the mortgage on the Shearer Property, in the amount of $14,012.35. (D. Ex. 4). In response, on October 18, 2005, Creditor filed Claim No. 31 on the Shearer Property, in the amount of $39,669.77.[2] (Cr. Ex. 8). Previously, in March 2004, Creditor timely filed Claim No. 3 on the Rustic Property, in the amount of $82,275.26, yet it now claims that the $82,275.26 figure represented the principal balance on the mortgage, not the total amount owed on the petition date. (Cr. Ex. 7). Creditor asserts that the proper amount of Claim No. 3 should be $97,512.42 (plus interest), the amount entered in a Summary Final Judgment in Foreclosure by the Duval County Circuit Court, in January 2004. (Cr. Ex. 2). Unable to agree on the allowed amount of Creditor's claims, on October 19, 2005, the parties filed an (interim) "Stipulation on Motion for § 1129(b) Treatment of Class 4 Creditor Wells Fargo Home Mortgage, Inc. ('the Stipulation')," which provided, in part:

2. [Creditor] and Debtor may file claim objections or motions to value the Collateral on or before 11/15/05.

3. Pending the resolution of claims objections or motions to value, or the filing with the Court of an agreement fixing [Creditor's] claim and collateral value, [Creditor] shall be paid an interim monthly payment of $796.73 on the claim secured by 11218 Rustic Pines Blvd. and $319.16 on the claim secured by 728

Shearer St., on or before the first day of each month commencing 12/01/05. These payments will be due whether or not an Order Confirming Debtor's Plan becomes final prior to the first payment due date.

4. Interim payments will be credited toward interim mortgage balances of $119,754.12 on ... 11218 Rustic Pines Blvd. and $47,971.78 on ... 728 Shearer St., which shall accrue interest at the rate of 7% per annum commencing 11/30/05. (Cr. Ex. 5).

Later that day, Creditor filed a Motion to Value the Shearer and Rustic Properties, claiming that it was oversecured in the motion. (D. Ex. 8).

On November 8, 2005, the Court entered an Order Confirming Chapter 11 Plan, and entered an order granting Debtor's motion under § 1129(b). (D. Ex. 5). On November 17, 2005, Creditor filed an amended Motion to Value the two properties. In response, on December 12, 2005, Debtor filed an objection, arguing that Creditor's amended motion was untimely, and that the affidavit supporting it was frivolous.[3] (D. Ex. 10). A hearing on Creditor's amended Motion to Value was scheduled for February 1, 2006; however, the day before the hearing, the parties filed a joint motion for continuance. (Cr. Ex. 4). The Court denied the parties' motion for continuance, and Creditor withdrew its Motion to Value at the hearing.[4] (Cr. Ex. 6).

At the August 16, 2007, hearing on this motion, Debtor testified that he has made all of the monthly payments contemplated by the Stipulation (through August 2007),

---

2. Creditor did not file a proof of claim on the Shearer Property prior to Debtor filing Claim No. 30. Claim Nos. 30 and 31 were untimely as the claims bar date was September 29, 2004.

3. Debtor claimed that the affiant's opinion on the value of real estate in Jacksonville lacked support, like sales of comparable properties. (D. Ex. 10).

4. Debtor (and his counsel) did not attend the February 1, 2006, hearing. (Cr. Ex. 6).

although a few payments were late. Creditor's representative testified that, pursuant to the Stipulation, the mortgages became "simple interest loans," meaning that any late payments by Debtor would result in higher interest payments. (Cr. Ex. 5). Further, Debtor testified that: (i) Creditor sent him several incorrect post-confirmation mortgage statements requesting payment for items he thought were discharged under the Plan; and (ii) his liability for escrow advances was set out in the original loan documents between the parties, but that he was no longer liable for such advances, post-confirmation. (D. Exs. 12, 13). Finally, Debtor presented an accounting report and the related testimony of John Giovannoni, an expert witness in accounting. Mr. Giovannoni testified that Creditor has improperly applied and accounted for Debtor's payments thus far, and that the proper monthly payments under the Plan should be $547.38 and $93.22, for the Rustic and Shearer Properties, respectively. (D. Ex. 6).

## CONCLUSIONS OF LAW

The issues presently before the Court are whether: (i) Creditor should be held in contempt for failing to comply with the Plan pursuant to 11 U.S.C. § 1141(d); (ii) Creditor should be held in contempt for discharge violations under 11 U.S.C. § 105(a); and (iii) Creditor vexatiously multiplied litigation, justifying an award of fees/costs to Debtor, under 28 U.S.C. § 1927. However, in order to resolve these issues, the Court must first determine the allowed amount of Creditor's secured claims.

## I. The Allowed Amount of Creditor's Claims

■ The Court has previously stated that, "[a] proof of claim ... is considered prima facie evidence of its validity ... and is deemed allowed unless a party in interest objects." *In re Southern Cinemas, Inc.*, 256 B.R. 520, 526 (Bankr.M.D.Fla. 2000).

Debtor argues that, although Creditor timely filed Claim No. 3 on the **Rustic Property** in March 2004, it was filed on "a non-standard form that purported to specify the amount of the claim *'plus* interest, accrued late charges and advances made in accordance with the loan documents.'" (D. Ex. 3). Debtor states that Creditor never filed an amendment to Claim No. 3. Further, Debtor maintains that Creditor's right to levy fees/charges pursuant to the loan documents "was extinguished" after the Duval County Circuit Court entered a Summary Final Judgment in Foreclosure, in January 2004. (Cr. Ex. 2). Thus, Debtor asserts that the allowed amount of Claim No. 3 should be $82,275.26 (the amount as originally filed by Creditor). (D. Ex. 3).

As Creditor failed to file a proof of claim for the **Shearer Property** prior to the claims bar date, Debtor filed Claim No. 30 on behalf of Creditor, in the amount of $14,012.35, on October 14, 2005. (D. Ex. 4). According to Debtor, as Claim No. 30 "was never objected to, supplemented or amended," it was an allowed claim under the Plan. (D. Ex. 4). Further, Debtor argues that Creditor's Claim No. 31, filed shortly after he filed Claim No. 30, was untimely and therefore, was not an allowed claim. (D. Exs. 4, 5).

Creditor states that it timely filed Claim No. 3 on the **Rustic Property** in March 2004, in the amount of $82,275.26, which represented the principal balance on the mortgage, but not the total amount owed on the petition date. (Cr. Ex. 7). Creditor further states that, as the Duval County Circuit Court entered a Summary Final Judgment in Foreclosure, in the amount of $97,512.42, the allowed amount of Claim

No. 3 should be $97,512.42, plus interest. (Cr. Ex. 2).

Creditor acknowledges that it did not file a claim on the **Shearer Property** prior to the claims bar date. (Cr. Ex. 8). However, in response to Debtor filing Claim No. 30 on its behalf, Creditor filed Claim No. 31 on October 18, 2005, in the amount of $39,669.77.[5] (Cr. Ex. 8). As Debtor did not object to Claim No. 31, Creditor argues that it was an allowed claim.

▪ Before resolving the dispute concerning the allowed amount of Creditor's claims, the Court finds it necessary to emphasize that *the dilatory actions of both attorneys has prejudiced their respective clients,* and that *the inaction of both attorneys has caused this situation to arise.* With that in mind, the Court will attempt to resolve the issues before it as equitably as possible. The Court finds that the respective debts of Creditor will be paid over a 30 year period (360 months), with Creditor retaining its lien on the properties until payments are completed. Further, the Court finds that the allowed amount of Creditor's claim on the Shearer Property to be $39,669.77, and the allowed amount on the Rustic Property to be $82,275.26. (Cr. Exs. 7, 8). Although neither party filed a timely claim on the Shearer Property, Creditor filed Claim No. 31 shortly after Debtor filed a claim on its behalf, and Debtor never objected to Claim No. 31. (D. Ex. 4). Therefore, Claim No. 31 is an allowed claim. (Cr. Ex. 8); *see In re*

*Southern Cinemas, Inc.,* 256 B.R. at 526. Similarly, although Claim No. 3 may have been filed on a non-standard form, it was timely filed and never objected to (or amended by Creditor); therefore, it was allowed claim. (Cr. Ex. 7). Finally, the Court has determined that interest shall accrue on each of Creditor's claims at the rate(s) contained in the original mortgage agreement(s) between the parties.

In order to compute the amount owed on each of Creditor's claims, the Court instructs the parties to start with the allowed amount of each claim (above), and add interest from the petition date to the date of this order. Then, deduct from that amount any payments made thus far (payments shall be credited to interest first, and then to principal) to arrive at the current principal balance.[6] Finally, if the parties are unable to compute the amount owed on Creditor's claims by using these instructions, the Court will appoint a third-party to do so, at the parties' expense.

## II. Whether Creditor Should be Held in Contempt for Failing to Comply with Debtor's Confirmed Plan and for Discharge Violations

11 U.S.C. § 1141 (2004), entitled "Effect of Confirmation" provides, in part:

(a) ... [T]he provisions of a confirmed plan bind the debtor ... and any creditor ... whether or not the claim or interest of such creditor ... is impaired

---

5. After Debtor filed Claim No. 30, Creditor received the following Notice of Claim filed by Debtor:

... Debtor filed a claim on your [Creditor] behalf ... on October 14, 2005, in the amount of $ 14,012.35. The filing of a claim by you [Creditor] ... shall supersede the proof of claim filed by Debtor.

6. In addition to his regular monthly payments, as a result of this order, to the extent

Debtor is behind in his payments he must pay any arrearage(s) (*including* arrearages for escrow advances) on a monthly basis, beginning with the next monthly payment in December 2007. Further, debtor shall cure all such arrearages within 18 months, beginning in December 2007 (unless the parties *mutually* agree that Debtor may commence his arrearage payments at a later date).

under the plan and whether or not such creditor . . . has accepted the plan.

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) . . . whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed . . .;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan;

Debtor asserts that Creditor unilaterally modified the Plan by failing to apply his interim monthly payments (under the Stipulation) to the appropriate loan balances. Debtor indicates that after making some of the monthly payments, the balance owing on the Rustic and Shearer Properties actually *stayed the same* or *increased,* rather than decreased. (D. Exs. 12, 13).[7] According to Debtor, "[Creditor's] unilateral diversion of and refusal to correctly account for the payments resulted in: (i) [Creditor] billing and receiving $9,505.71

more than it was entitled to over the 20 months of the Plan to date ($4,687.95 Rustic + $4,778.20 Shearer); and (ii) [Creditor] continuing to bill the Debtor $80,037.44 (42,636.95 Rustic + $37,400.49 Shearer) more than he owes according to the Plan." (D. Ex. 6).[8] In further support of his position, Debtor cites two non-binding decisions which demonstrate that, in the past, Creditor has improperly modified the terms of a debtor's bankruptcy plan, and that Creditor has improperly applied and accounted for a debtor's payments under a confirmed plan. *See In re Jones,* 366 B.R. 584, 590–591 (Bankr.E.D.La. 2007); *In re Padilla,* 2007 WL 2264714 at *1, 2, 2007 Bankr.LEXIS 2655 at *1, *6–7 (Bankr.S.D.Tex. August 3, 2007). Finally, Debtor asserts that this Court retains jurisdiction to enforce the terms of his Plan, under 11 U.S.C. §§ 105(a) and 1142(b).[9] Thus, Debtor requests that the Court direct Creditor to refund any excess funds collected, and to apply his payments consistent with the Plan.

Additionally, Debtor argues that Creditor has violated the discharge imposed by 11 U.S.C. § 1141(d)(1), and the discharge injunction under 11 U.S.C. § 524(a), by sending him countless mortgage state-

---

7. Debtor's Exhibit 12, mortgage statements concerning the Shearer Property, indicates that Debtor's interim monthly payments of $320.00 were divided between (i) principal, (ii) interest, (iii) escrow, and (iv) late charges. Debtor's Exhibit 13 indicates that his interim monthly payments on the Rustic Property ($797.00) were divided between (i) principal, (ii) interest, and (iii) escrow. The mortgage statements further indicate that only a small portion of Debtor's interim payments actually went to paying off the principal balances. Most of the interim payments, usually over 80%, were applied to "interest" and "escrow." (D. Exs. 12, 13). Creditor's representative testified that, per the Stipulation, the mortgages became "simple interest loans;" therefore, any late payments by Debtor resulted in higher interest obligations. (D. Ex. 5).

8. In his report, Debtor's expert witness computed the amounts listed above by utilizing the Debtor's opinion as to the allowed amount of Creditor's claims, and as to what Debtor thought his monthly payments should be under the Plan. The credibility and utility of the accounting report, and its conclusions, are questionable as the allowed amount of Creditor's claims had not been resolved, nor had the proper amount of monthly payments under the Plan. (*See* D. Ex. 6).

9. 11 U.S.C. § 1142(b) (2004) provides, in part, that "[t]he court may direct the debtor and any other necessary party . . . to perform any [ ] act . . . that is necessary for the consummation of the plan."

ments in an attempt to collect thousands of dollars of allegedly "overdue payments," plus "unpaid late charge(s)," and "other charges." (D. Exs. 12, 13). Debtor points out that the Plan discharged all of his pre-confirmation debts (including late charges), and that Creditor has failed to present any evidence indicating it was entitled to assess post-confirmation late charges. (D. Ex. 5). In support, Debtor cites a Chapter 13 case in which the Court determined that Creditor's practice of repeatedly sending a debtor mortgage statements, in an attempt to collect discharged fees/debts, violated the discharge injunction and constituted contempt of court. *In re Riser*, 298 B.R. 469, 472–473 (Bankr. M.D.Fla.2003). Consistent with *Riser*, Debtor argues that Creditor clearly had notice of the Plan and his discharge, yet it willfully tried to collect funds for "discharged" fees/charges, post-confirmation. *See Id.* Therefore, Debtor urges the Court to find Creditor in contempt, as it continues to frustrate his efforts to consummate the Plan. Due to Creditor's alleged violations, Debtor states that he has incurred $2,104.40 in expenses, and $11,475.00 in attorney's fees (51 hrs. at $225/hr.). (D. Ex. 14).

In opposition to Debtor's position, that it failed to comply with the Plan, Creditor argues that provisions contained in the loan documents that are not in conflict with, or provided for in the Plan, survive the confirmation order unaffected. Creditor claims that, in many cases, loan documents govern the parties' relationship, as a

debtor's plan often fails to address some of the material provisions contained in such documents. In the case presently before the Court, Creditor asserts that the Plan fails to address Debtor's liability for escrow advances. (D. Ex. 5). Creditor claims that it has advanced funds for taxes, hazard insurance, and mortgage insurance on the properties. (Cr. Exs. 9, 10). Moreover, Creditor highlights the fact that Debtor acknowledged that his liability for late fees and escrow advances was set out in the original loan documents.[10] Thus, Creditor asserts that it did not improperly bill Debtor, or improperly account for his interim payments, as it was entitled to seek repayment for escrow advances.

In response to Debtor's assertion that it violated the discharge injunction by attempting to collect late charges and escrow advances, Creditor states that a "bona-fide dispute" exists over whether or not the Plan terminated his liability for such charges/advances. Thus, Creditor claims that sanctions against it are not warranted. Creditor admits sending Debtor several incorrect, post-confirmation mortgage statements before modifying its system to reflect the terms of the Stipulation; however, it maintains that Debtor suffered no injury by receiving the incorrect statements, as he continued to make monthly payments in accordance with the Stipulation, not the mortgage statements.[11] Finally, Creditor states that a delay in modifying its accounting system was understandable, as a level of uncertainty surrounded the ongoing viability of the Stipu-

---

10. Debtor testified that, post-confirmation, he was not responsible for such advances, per the Plan. Creditor asserts that interpreting the language of section 8.04 of the Plan as voiding all provisions in the loan documents (even those not provided for, or in conflict with the Plan) would lead to an "absurd" result. Section 8.04 of the Plan states, "[t]he prior relationship of Debtor–Creditor will be replaced

by one of obligor-obligee with the Plan becoming the only operative document ... between the parties." (D. Ex. 5).

11. Additionally, Creditor claims that it has corrected any accounting errors, and that Debtor did not pay any additional interest as a result of its delay in modifying its accounting system to reflect the Stipulation.

lation, given that it was only an interim agreement. (*See* Cr. Ex. 13).[12]

█ The Court has previously stated that once a Chapter 11 plan is confirmed, "it is not only binding upon the Debtor but all claimants dealt with under the plan." *In re Turner*, 221 B.R. 920, 924 (Bankr. M.D.Fla.1998). Additionally, the Court has recognized that § 524, "provides that a discharge acts as an injunction against acts of a creditor as defined in 11 U.S.C. § 524(a)(1–3)." *Id.* Further, the Court has established that "[b]ankruptcy courts enforce discharge orders under the authority set forth in 11 U.S.C. § 105(a)," which allows courts to issue "any order, process or judgment that is necessary or appropriate to carry out provisions" of the Bankruptcy Code. *Id.* at 925; 11 U.S.C. § 105(a) (2004). Thus, the Court has previously acknowledged that a debtor is entitled to an award of attorney's fees and costs, when another party "violates the permanent discharge injunction upon a finding of contempt."[13] *Id.* at 925, 926.

█ The Court has determined that sanctions against Creditor for failing to comply with the Plan, and for violating Debtor's discharge, are not warranted. The Court has further determined that those provisions contained in the original loan documents between the parties that are not in conflict with, or provided for in the Plan, remain valid and enforceable. Specifically, the Court finds that the provision(s) regarding Debtor's responsibility for post-petition escrow advances (for taxes and hazard insurance) remain in effect.[14] Thus, Creditor did not engage in improper conduct, and was acting within its rights, in trying to recover the funds it advanced for taxes and hazard insurance. (Cr. Exs. 9, 10). Additionally, although Creditor sent Debtor several incorrect, post-confirmation mortgage statements seeking payment, Debtor did not suffer any harm by receiving them, as he continued making monthly payments according to the Stipulation's terms. There is no evidence in the record indicating that Debtor paid more than he should have (under the Stipulation), despite his receipt of numerous payment requests, post-confirmation. Further, nothing in the record before the Court indicates that Debtor suffered harm due to Creditor's delay in modifying its accounting system to reflect the Stipulation's terms. Consequently, sanctions against Creditor are not warranted at this time.

---

**12.** Creditor's Exhibit 13 is an e-mail dated November 16, 2006, from Debtor's counsel to Creditor's counsel. In the email, Debtor's counsel states, "I believe it is time to finalize the interim agreement [Stipulation]. Please advise me of three dates when you ... can meet to finish the negotiations that have been dragging on for the past 14 months." (Cr. Ex. 13).

**13.** The Court explained that in order to find a party in (civil) contempt under § 105(a), "the offending party must have knowingly and willfully violated a definite and specific court order." *Turner*, 221 B.R. at 925.

In *Turner*, plaintiff-mortgagor filed a complaint against defendant-mortgagee for failing to comply with her confirmed Chapter 11 plan, and for discharge violations. *Id.* at 921,

925. Plaintiff alleged that defendant: (i) failed to properly apply and account for her plan payments by diverting a portion of them to an "unapplied funds" account; and (ii) assessed post-confirmation escrow advances against her account without notifying her. *Id.* at 922–924. The Court ruled that defendant's conduct violated § 524(a)'s discharge injunction, and it found the defendant in contempt under § 105(a), for failing to comply with the confirmed plan. *Id.* at 925. Therefore, the Court awarded plaintiff attorney's fees and costs, among other relief. *Id.* at 926.

**14.** However, the Court finds that Debtor's obligation to pay advances for mortgage insurance terminated on the petition date.

### III. Vexatiously Multiplying Litigation—28 U.S.C. § 1927

 28 U.S.C. § 1927 (2004), entitled "Counsel's liability for excessive costs," states:

Any attorney ... admitted to conduct cases in any court of the United States ... who so multiplies the proceedings ... unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Debtor argues that Creditor has repeatedly filed frivolous motions, which its counsel knew could not be supported by evidence, resulting in a needless burden on the parties and the Court. Specifically, Debtor claims that Creditor filed three motions for relief from stay and two motions to value, which were supported by frivolous affidavits. Debtor further alleges that seven hearings were scheduled on the motions, and that Creditors' attorneys did not attend any of them. Instead, Debtor asserts that Creditor sent local counsel to the hearings, to advise the court that he had no evidence in support of the motions. Finally, Debtor points out that each motion was denied, and that he incurred $1,980.00 in attorney's fees due to Creditor's conduct (8.8hrs. at $225/hr.). (D. Ex. 14).

Debtor cites two cases in support of his position, that a bankruptcy court can award fees/costs pursuant to 28 U.S.C. § 1927. The first case cited by Debtor, *In re Volpert*, does not directly support his position, as the appellate court used a different statute, 11 U.S.C. § 105(a), to affirm sanctions against an attorney who was initially sanctioned under 28 U.S.C. § 1927, by a bankruptcy court. *In re Volpert*, 110 F.3d 494, 500–501 (7th Cir.1997). The court in *Volpert* specifically stated, "[g]iven that we have determined ... that

the bankruptcy court in this case had ample authority, apart from § 1927, to sanction [the attorney's] behavior, we shall ... leave unanswered whether bankruptcy judges can exercise the authority of a 'court of the United States.'" *Id.* at 500. The court continued, "[w]e therefore hold that, under § 105(a), bankruptcy courts may punish an attorney who ... vexatiously multiplies the proceedings before them." *Id.* The second case cited as support by Debtor, *In re Ulmer*, is from a different jurisdiction (like *Volpert*); thus, it is not binding precedent. *In re Ulmer*, 363 B.R. 777, 777 (Bankr.D.S.C.2007). In *Ulmer*, a South Carolina case, the bankruptcy court fined an attorney $500, under 28 U.S.C. § 1927, for routinely failing to appear to prosecute motions she initiated. *Id.* at 784, 786.

In opposition, Creditor argues that sanctions against it, pursuant to 28 U.S.C. § 1927, are not warranted. Creditor maintains that there is respectable authority which states that bankruptcy courts lack the authority to sanction attorneys under 28 U.S.C. § 1927. *See In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1086 (10th Cir.1994); *In re Rookery Bay Ltd.*, 195 B.R. 811, 814 (Bankr.M.D.Fla.1996); *In re Burt*, 179 B.R. 297, 301 (Bankr. M.D.Fla.1995). Further, Creditor asserts that Debtor has failed to present sufficient evidence to support his contention that it has vexatiously multiplied litigation.

Without deciding whether a bankruptcy court is a "court of the United States," the Court finds that sanctions against Creditor for vexatiously multiplying litigation, under 28 U.S.C. § 1927, are not warranted. The Court has determined that *the attorneys for both parties* did a poor job of representing their clients' interests, and that both attorneys bear equal responsibility for complicating and prolonging the litigation in this case. Additionally, the

Court finds that Debtor's motion for sanctions was untimely, as Creditor's motions (mentioned above) were denied approximately two years ago. Debtor should have filed a motion for sanctions against Creditor shortly after the alleged (sanctionable) acts occurred, rather than waiting nearly two years to take action.

### *CONCLUSION*

Based upon the above, Debtor's Motion to Require Creditor to Comply with Plan, to Hold it in Contempt for Discharge Violations, and to Award Costs and Fees for Vexatiously Multiplying Litigation is DENIED. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

**ORDERED.**